STATE OF NEBRASKA, EX REL. JOHN F. CROMELIEN,
v. JAMES E. BOYD, GOVERNOR.

FILED FEBRUARY 1, 1893.   No. 5776.

Additional Representation in Congress:  ELECTION PROC-LAMATION: MANDAMUS TO GOVERNOR: JURISDICTION.  By the apportionment act of February 7, 1891, Nebraska is entitled to six representatives in congress after the 3d day of March, 1893.   In an action to compel the governor to call an election for three additional members of congress to fill a vacancy caused by the want of representation in the present congress, *held*, that the question was a political and not a judicial one; that by reason of improved methods the census was more rapidly taken and the returns classified than formerly,

so that the population of each state was known a few months after the enumeration was made, and that to deprive those states entitled to increased representation for two years was unjust, but congress must provide the remedy.

ORIGINAL application for *mandamus.*

*John F. Cromelien* and *H. D. Estabrook,* for relator.

*George H. Hastings, Attorney General, contra.*

MAXWELL, CH. J.

This action was begun November 1, 1892, the object being to compel the defendant, as governor of the state, to issue his proclamation for the election on November 8, 1892, of three additional members of congress. The questions involved were too important to be decided without a full examination, and in the short time before the election a thorough investigation could not be made, hence the decision was delayed. In the petition the relator alleges: " * * * that on March 1, 1892, was approved an act by the senate and house of representatives of the United States of America in congress assembled, entitled 'An act to provide for taking the eleventh and subsequent censuses,' section 1 of which said act providing that the census of the population, wealth, and industry of the United States shall be taken as of date of June 1, 1890, a copy of which said act is hereto attached, marked 'Exhibit A,' and made a part hereof; that the census of the population of the United States was made in pursuance of said act, and duly promulgated prior to the 12th day of December, A. D. 1890; that it was found from said census that in certain states in the Union there had not been sufficient increase in the population of said states to warrant an increase, or entitling said states to an additional number of representatives in congress, that is to say, Connecticut, Delaware, Florida, Idaho, Indiana, Iowa,

Kentucky, Louisiana, Maine, Maryland, Mississippi, Montana, Nevada, New Hampshire, New York, North Carolina, North Dakota, Ohio, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, West Virginia, and. Wyoming.

"That in the fifty-first congress, and for ten years prior thereto, said states had, under existing apportionment acts, been entitled to the following number of representatives, to-wit: Connecticut, 4; Delaware, 1; Florida, 2; Idaho, 1; Indiana, 13; Iowa, 11; Kentucky, 11; Louisiana, 6; Maine, 4; Maryland, 6; Mississippi, 7; Montana, 1.; Nevada, 1; New Hampshire, 2; New York, 34; North Carolina, 9; North Dakota, 1; Ohio, 21; Rhode Island, 2; South Carolina, 7; South Dakota, 2; Tennessee, 10; Vermont, 2; Virginia, 10; West Virginia, 4, and Wyoming, 1.

"That in the fifty-second congress of the United States, being the present congress, each and every of said states last above mentioned was represented by the sam number of representatives as in the fifty-first congress, and those prior thereto, that is to say, each of said states had and has in said fifty-second congress the number of representatives last above enumerated, and will continue so to have said representation for the ensuing ten years.

" * * * that prior to the census of 1890, under the apportionment act of 1880, the state of Nebraska has been entitled to three representatives in congress, and that in the fifty-first congress Nebraska was represented by three congressmen, and had been so represented for ten years prior thereto; that immediately upon the promulgation of the census of 1890 it was apparent that for Nebraska to have an equal representation in the fifty-second congress with the states heretofore enumerated, three additional representatives should be elected from said state of Nebraska, and that in the fifty-second congress Nebraska was, and is, entitled to six representatives, but your relator makes

known to your honorable court that the fifty-first congress of the United States, ignoring the rights of Nebraska to an equal representation with the other states in the Union in all subsequent congresses, passed an act approved February 7, 1891, entitled 'An act making an apportionment of representatives in congress among the several states under the eleventh census,' section 1 of which said act provides *that after the 3d day of March, 1893*, the house of representatives shall be composed of 356 members, to be apportioned among the several states, giving to the states herein first enumerated the same number of representatives that said states had in the fifty-first congress, and all congresses subsequent to the census of 1880, and to the state of Nebraska six representatives.

"Your relator claims that in so far as said apportionment act passed by said fifty-first congress undertakes to postpone the equal representation of Nebraska in the congress of the United States until after the 3d day of March, 1893, that said act is nugatory and void, and that the state of Nebraska was, and is, under the apportionment act adopted by the fifty-first congress as the basis of representation, entitled to six representatives in the present congress, a copy of which said apportionment act is hereto attached, marked 'Exhibit B,' and made a part hereof.

" *  *  *  that the people of the state of Nebraska did not and have not elected three additional congressmen at large to fill the vacancies in said fifty-second congress, as provided in the apportionment act of February 7, 1891, and that there are now existing three vacancies in the present congress, which ought to be filled by a special election of three congressmen at large, by the people of the state of Nebraska; that on the 29th day of October, A. D. 1892, and at divers and sundry times prior thereto, your relator demanded of his excellency, James E. Boyd, governor of the state of Nebraska, being the respondent herein, that he issue his proclamation as provided by statute, for a special

election to fill said vacancies in congress; that on the 17th day of October, 1892, your relator addressed a communication to his excellency, Governor Boyd, directing his attention to the matter herein involved, and emphasizing the duty of said Boyd as governor, to issue his proclamation as provided by law for a special election to fill the vacancies aforesaid, a copy of which said communication is hereto attached, marked 'Exhibit C,' and made a part hereof; that said Governor Boyd has not replied to said communication in writing, but said Governor Boyd has informed your relator verbally that he had referred the communication aforesaid to the attorney general of the state of Nebraska for his legal opinion on the points involved, and had not obtained as yet an expression of opinion; that on the 29th day of October, A. D. 1892, he called personally upon said Governor Boyd at the governor's office in the capitol, in the city of Lincoln, Nebraska, and made formal demand that he issue his proclamation for a special election to fill the vacancies aforesaid; and the said Governor Boyd then and there positively refused to issue such proclamation, giving as his reason, that the matters in question were of too vast importance, the legality of the proposed action too dubious, and the consequences possibly too serious for him to assume the responsibility until the supreme court or attorney general had instructed him as to his legal duties in the premises; and the said Boyd, as governor of the state of Nebraska, joins herein with your relator, asking that this honorable court make a solution of the difficulty and thus prevent a legal controversy."

He also sets forth a copy of the act for the census of June, 1890, and the apportionment act of February 7, 1891, which is as follows:

"That after the 3d of March, 1893, the house of representatives shall be composed of 356 members, to be apportioned as follows: Alabama, 9; Arkansas, 6; California, 7; Colorado, 2; Connecticut, 4; Delaware, 1; Florida, 2;

Georgia, 11; Idaho, 1; Illinois, 22; Indiana, 13; Iowa, 11; Kansas, 8; Kentucky, 11; Louisiana, 6; Maine, 4; Maryland, 6; Massachusetts, 13; Michigan, 12; Minnesota, 7; Mississippi, 7; Missouri, 15; Montana, 1; Nebraska, 6; Nevada, 1; New Hampshire, 2; New Jersey, 8; New York, 34; North Carolina, 9; North Dakota, 1; Ohio, 21; Oregon, 2; Pennsylvania, 30; Rhode Island, 2; South Carolina, 7; Tennessee, 10; Texas, 13; Vermont, 2; Virginia, 10; Washington, 2; West Virginia, 4; Wisconsin, 10; Wyoming, 1.

"Sec. 2. That whenever a new state is admitted to the Union, the representative or representatives assigned to it shall be in addition to the number, 356.

"Sec. 3. That in each state entitled under this apportionment, the number to which such state may be entitled in the fifty-third and each subsequent congress shall be elected by districts composed of contiguous territory and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of the representatives to which such state may be entitled in congress, no one district electing more than one representative.

"Sec. 4. That in case of an increase in the number of representatives which may be given to any state under this apportionment, such additional representative or representatives shall be elected by the state at large, and the other representatives by the district now prescribed by law, until the legislature of such state, in the manner herein prescribed, shall redistrict such state, and if there be no increase in the number of representatives from a state the representatives thereof shall be elected from the districts now prescribed by law until such state be redistricted as herein prescribed by the legislature of such state.

"Sec. 5. That all acts and parts of acts inconsistent with this act are hereby repealed.

"Approved February 7, 1891."

He has accompanied his application with an elaborate printed argument, in which he contends with great force that, as a matter of strict right, Nebraska is, and has been since February 7, 1892, entitled to six representatives in congress. The justice of this claim will not be denied, but can this court correct the wrong? We think not. Section I, article I, of the constitution of the United States provides:

"All legislative powers herein granted shall be vested in a congress of the United States, which shall consist of a senate and house of representatives.

"Sec. II.    1. The house of representatives shall be composed of members chosen every second year by the people of the several states; and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature.

"2. No person shall be a representative who shall not have attained the age of twenty-five years and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen.

"3. Representatives and direct taxes shall be apportioned among the several states which may be included within this Union according to their respective numbers, which shall be determined by adding to the whole number of free persons, including those bound to service for a term of years, and excluding Indians not taxed, three-fifths of all other persons. The actual enumeration shall be made within three years after the first meeting of the congress of the United States, and within every subsequent term of ten years, in such manner as they shall by law direct. The number of representatives shall not exceed one for every 30,000, but each state shall have at least one representative; and until such enumeration shall be made, the state of New Hampshire shall be entitled to choose three; Massachusetts, eight; Rhode Island and Providence

Plantations, one; Connecticut, five; New York, six; New Jersey, four; Pennsylvania, eight; Delaware, one; Maryland, six; Virginia, ten; North Carolina, five; South Carolina, five; and Georgia, three.

"4. When vacancies happen in the representation from any state, the executive authority thereof shall issue writs of election to fill such vacancies.

"5. The house of representatives shall choose their speaker and other officers, and shall have the sole power of impeachment."

Section 2 of the fourteenth amendment is as follows: "Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for president and vice president of the United States, representatives in congress, the executive and judicial officers of a state, or the members of the legislatures thereof, is denied to any of the male inhabitants of such state, being twenty-one years of age, and citizens of the United States, or in anyway abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state."

It will be seen that the apportionment of representatives among the several states, after the taking of each decennial census, is made by congress upon some fixed rule or ratio which applies equally to all the states. The apportionment is, so far as appears, fair, and the only complaint is that it should take effect in 1891 instead of 1893. There is much force in the objection that the states entitled to increased representation are thereby deprived of the same for two years. The question, however, is political rather than judicial, and it is difficult to perceive in what way the

courts can remedy the defect. With the present improved modes of taking the census and classifying the returns, the population of each state can be ascertained within a few months after the actual enumeration, so that the apportionment can be made in December or January following the taking of the census. It would seem but justice that this should take effect in the succeeding congress, and we may confidently trust to that spirit of fairness so characteristic of the American people, to correct the wrong. The courts, however, have no authority to declare that a greater number of representatives shall be elected and admitted to congress than the statute specifies, and the writ must be denied and the action

DISMISSED.

The other judges concur.