## PIRTLE v. BROWN et al.

No. 8466.

Circuit Court of Appeals, Sixth Circuit.

March 8, 1941.

George S. Brown and E. Crampton Harris, both of Birmingham, Ala. (Harris & Brown, of Birmingham, Ala., on the brief), for appellant.

Nat Tipton, of Nashville, Tenn. (Nat Tipton and W. F. Barry, Jr., both of Nashville, Tenn., and E. F. Smith, of Morristown, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

On September 13, 1939, a special election was held in the Third Congressional District of Tennessee to fill a vacancy in the House of Representatives of the United States. Appellant, Henry Pirtle, possessed all the qualifications required by the laws of Tennessee to entitle him to vote in this election except that he had not paid his poll tax. For this reason the judges of election declined to allow him to vote.

The question is, whether the Constitution and statutes of Tennessee, which make the payment of a poll tax a condition precedent to the right to vote for members of Congress, are repugnant to any provisions of the Constitution of the United States.

From an adverse decree, Pirtle appealed.

Article I, Section 2, of the Constitution of the United States is as follows: "The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."

It is not to be doubted that the people of a state may through a constitutional convention prescribe the qualification of voters and the limitation of the elective franchise, provided of course that the privileges and immunities of the voters guaranteed to them by some provision of the Federal Constitution are not violated. See Breedlove v. Suttles, 302 U.S. 277, 283, 58 S.Ct. 205, 82 L.Ed. 252. The Tennessee Constitution was adopted in 1870 and Article IV, Sec. 1, thereof, fixed the qualifications for voters as follows:

"Every male person of the age of twenty-one years, being a citizen of the United States, and a resident of this State for twelve months, and of the county wherein he may offer his vote for six months next preceding the day of election, shall be entitled *to vote for members of the General Assembly,* and other civil officers for the county or district in which he resides; and *there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of election, where he offers to vote, satisfactory evidence that he has paid the poll taxes assessed against him for such preceding period as the Legislature shall prescribe, and at such time as may be prescribed by law, without which his vote cannot be received.*" (Italics ours.)

The General Assembly includes, of course, the Senate and the House of Representatives, the latter being the most numerous branch of the Legislature.

Pursuant to this constitutional provision, the Legislature (Sec. 2027 of the Code of Tennessee) enacted the following statute, "Every person in this state, who is other-

wise a qualified voter under the constitution and laws, shall, as a condition precedent to the exercise of voting, furnish to the judges of election satisfactory evidence that he has paid the poll tax, if any, assessed against him for the year next preceding the election, not later than sixty days prior to the day of said election, without which his vote shall not be received."

Article IV, Section 1 of the Tennessee Constitution, above quoted, was adopted by a vote of fifty-six yeas and eighteen nays. The principal objection to it, as indicated by the separate protests (p. 178 et seq. of the Journal of the Proceedings of the Convention) of Mr. Staley, Mr. Gibson and others, members thereof, was that suffrage was a right and not a privilege that could be taxed. Mr. Gibson referred to it as a right such as the right to life, liberty or property. This is not true. It is a political right which the people of a state may appropriately condition through its fundamental law or legislation in conformity therewith. But none of the protestants in their vigorous denunciation of the provision advanced the argument presented here, that the right to vote for a member of Congress stems out of Article I, Section 2, of the Federal Constitution.

A pertinent preliminary inquiry is, whether the state has levied a poll tax upon the exercise of elective franchise. Article II, Section 28 of the Constitution of Tennessee provides that, "All male citizens of this State over the age of twenty-one years, except such persons as may be exempted by law on account of age or other infirmity, shall be liable to a poll tax of not less than fifty cents nor more than one dollar per annum. Nor shall any county or corporation levy a poll tax exceeding the amount levied by the State."

Article XI, Section 12 of the Constitution provides: "The State taxes derived hereafter from polls shall be appropriated to educational purposes, in such manner as the General Assembly shall, from time to time, direct by law."

Pursuant to these constitutional provisions, the Legislature passed the following statute: "Every inhabitant between the ages of twenty-one and fifty years, except persons who are deaf, dumb, blind or incapable of labor and of earning a livelihood, shall pay an annual poll tax of one dollar for School purposes, which shall be collected by the Trustee of the County and retained in the County where collected and apportioned to the Schools of said County in the manner prescribed by law. Liability for poll tax and the exemption therefrom is determined and fixed according to the age of the inhabitant, on the tenth day of January of each year." Code Tenn.1932, § 1082, as amended by Pub.Acts Tenn.1933, c. 149.

■ It is clear enough that these provisions do not levy or assess a poll tax upon voters as a class. Voters are nowhere referred to. It is of course true that a large number of voters would be liable for the tax but it is just as true that a large number, such as those who are deaf, dumb, blind, incapacitated for labor or over fifty years of age, would not. Upon the other hand, a large class of inhabitants ineligible to vote at all, such as aliens, persons convicted of infamous crimes, persons who have not lived in the state and county for the requisite period of time, and all persons who do not choose to vote, are still liable for the tax.

Again, it is worthy of note that the tax is levied by that section of the Tennessee Constitution dealing with taxation, while the disqualification of the voter for failure to pay it, is found in that section dealing with the qualification of voters.

The collection of the poll tax has always been attended with difficulty because the assessment falls upon many poor people but the state has earnestly insisted upon its collection. As an illustration (Sec. 1559 of the Code) the property taxpayer is not permitted to pay his tax without paying his poll tax at the same time and by the same section every tax collector who permits a violation thereof is held liable for all poll taxes which thus become delinquent.

The collection of the poll tax is stressed because when collected it becomes a part of an educational fund which the state, impoverished by war, began to build up, cherish and protect as a governmental policy, imbedded in the Constitution itself (Article XI, Sec. 12).

■ Upon the whole, we think it is reasonable to conclude that the provisions requiring the payment of the tax as a prerequisite to voting do not so much connote a levy and assessment as they do an effective method of collection. They do not levy a poll tax upon any voter. They give due recognition to the poll tax assessment laws hereinbefore quoted. They do not disturb any voter who is over fifty years of

age, or deaf, dumb, blind or incapacitated. They have their foundation in the idea that the normal voter will protect his franchise by paying his poll tax if it has been assessed against him. We think this is at least a permissible construction which we should adopt if any constitutional objection may thereby be foreclosed.

But in any event, we are not dealing with the question whether the payment of poll tax as a prerequisite to voting violates some natural right or fancied political right. The inquiry is, whether such provision denied any privileges or immunities protected by the Federal Constitution. We have already seen that Article I, Section 2 of the Constitution of the United States guarantees to the elector for members of Congress no other privileges than those accorded him by the state as an elector for the most numerous branch of the state legislature. But appellant goes beyond this. He urges that the quoted provision of Article IV, Section 1 of the Constitution of Tennessee and Section 2027 of the Code violates the "privileges and immunities" clause of the Fourteenth Amendment; that his right to vote for a member of Congress is not taxable, regardless of whether the amount of the tax imposed is trifling or substantial. We need not labor the point. It has been conclusively decided against appellant in Breedlove v. Suttles, supra, 302 U.S. page 283, 58 S.Ct. page 208, 82 L.Ed. 252, where the court said: "2. To make payment of poll taxes a prerequisite of voting is not to deny any privilege or immunity protected by the Fourteenth Amendment. Privilege of voting is not derived from the United States, but is conferred by the state and, save as restrained by the Fifteenth and Nineteenth Amendments and other provisions of the Federal Constitution, the state may condition suffrage as it deems appropriate. Minor v. Happersett, 21 Wall. 162, 170, et seq., 22 L.Ed. 627; Ex parte Yarbrough, 110 U.S. 651, 664, 665, 4 S.Ct. 152, 28 L.Ed. 274; McPherson v. Blacker, 146 U.S. 1, 37, 38, 13 S.Ct. 3, 36 L.Ed. 869; Guinn v. United States, 238 U.S. 347, 362, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124. The privileges and immunities protected are only those that arise from the Constitution and laws of the United States and not those that spring from other sources. Hamilton v. Regents, 293 U.S. 245, 261, 55 S.Ct. 197, 203, 79 L.Ed. 343."

The decree appealed from is affirmed.