## SAUNDERS v. WILKINS.
### No. 5385.

Circuit Court of Appeals, Fourth Circuit.

Dec. 6, 1945.

Arthur Dunn, of New York City, and Moss A. Plunkett, of Roanoke, Va., for appellant.

V. P. Randolph, Jr., Asst. Atty. Gen. (Abram P. Staples, Atty. Gen., of Virginia, on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and HARRY E. WATKINS, District Judge.

SOPER, Circuit Judge.

This action was brought by Henry L. Saunders, a citizen of Virginia, qualified under Article 1, Section 2, Clause 2 of the Constitution of the United States to be a candidate for the office of Representative in the Congress of the United States from the State, against Ralph E. Wilkins, Secretary of the Commonwealth of Virginia. The complaint alleged that on October 18, 1943 Saunders notified the Secretary of his intention to be a candidate to be elected to that office by the electors of the State at large at the general election to be held on November 7, 1944; that he filed with his notice a petition signed by two hundred and fifty qualified voters of the State at large, in accordance with § 154 of the Code of Virginia of 1942, and thereupon it became the duty of the Secretary of State to notify the Secretary of the Electoral Board of each county and city of the State of such candidacy; and that the defendant failed to perform this duty, but instead, on August 3, 1944, returned the declaration of candidacy and refused to certify the name of the plaintiff as such candidate. It appears from the correspondence filed with the complaint that the Secretary's refusal to certify the candidacy was based on an opinion of the Attorney General of the State which held that under the laws of Virginia no such office as member of the House of Representatives from the State at large existed, and no election was being held for that position.

The complaint charged that by the failure and refusal of the Secretary to certify the name of the plaintiff as a candidate for the office plaintiff was denied his political rights under the Constitution of the United States and was entitled to recover from the Secretary damages in the sum of $20,000 under R.S. § 1979, 8 U.S.C.A. § 43.

The complaint was met by a motion to dismiss on the ground that it failed to state a cause of action since questions relating to the apportionment of representatives among the several States are political in their nature and reside exclusively within the determination of Congress and hence the plaintiff was not deprived of any right

236

by the action of the Secretary. The District Judge accepted this view and dismissed the bill, holding that the office of Representative at Large from Virginia does not exist because Virginia has divided its territory into nine districts in conformity with the number of representatives allotted by Congress, and that it is only when a State fails to take such action that the office of Representative at Large comes into being.

The theory of the appellant's case may be thus summarized: Virginia has abridged the right of certain inhabitants of the State, twenty-one years of age and citizens of the United States, to vote for the choice of Presidential electors and for Representatives in Congress, and hence under the terms of § 2 of the Fourteenth Amendment the basis of representation of the State should be reduced in the proportion which the number of such citizens bears to the whole number of citizens twenty-one years of age in the State. The abridgment of the right of certain citizens of Virginia to vote, to which the plaintiff refers, results from §§ 18, 20, 21, 22, 23 and 24 of the State Constitution and § 22 of the State Tax Code [1] whereby certain requirements and qualifications for registration and voting are set out, including the payment of a poll tax, and the result, according to the plaintiff, is that sixty per cent of the inhabitants of the State are deprived of the right to vote. By reason of this action of the State it became the duty of Congress to make a corresponding reduction in the number of representatives allotted to Virginia, and if this had been done, Virginia would have been entitled to not more than four representatives.

In disregard of this duty, Congress passed § 2(a) of the Act of November 15, 1941, Chap. 470, 55 Stat. 762, 2 U.S.C.A. § 2b, whereby it was provided that each State shall be entitled in the 78th and in each Congress thereafter until the taking effect of a reapportionment to the number of Representatives shown in the statement transmitted to Congress by the President on January 8, 1941, based upon the method known as the method of equal proportions, no State to receive less than one member.[2] Under this apportionment Virginia was allotted nine representatives; and they have been since elected by the voters of the nine districts into which the State was divided by the Act of the Virginia legislature of 1934. Virginia Code of 1942, §§ 70, 71 and 72. Both of these Acts, the Act of Congress and the Act of the State Legislature, are invalid and of no effect since they are in conflict with § 2 of the Fourteenth Amendment, and consequently Representatives to Congress from Virginia must be chosen from the State at large, just as if no redistricting of the State had been made by the Legislature. The situation is

[1] These sections provide in substance as follows:

Section 18 provides that every citizen of the United States, twenty-one years of age, resident of the State one year, of the County six months and of the Precinct in which he offers to vote thirty days next preceding the election, and has paid his State poll taxes, shall be entitled to vote for members of the General Assembly.

Section 20 provides that every citizen of the United States having the qualifications of age and residence required in § 18 shall be entitled to register provided that he has personally paid all State poll taxes assessed against him for the three years next preceding.

Section 21 provides that a person registered under § 20 shall have the right to vote for all officers elected by the people, provided that he shall as a prerequisite to the right to vote personally pay six months prior to the election all State poll taxes assessed against him under the Constitution during the three years next preceding, unless exempted by § 22 from the payment of poll tax.

Section 22 exempts persons who served in the army or navy of the United States or the Confederate States in the war between the States.

Sections 23 and 24 exclude from registering and voting insane persons, paupers, persons convicted of certain crime, members of the armed forces temporarily in the State, &c.

Section 22 of the State Tax Code, Code Va.1942 Appendix, p. 2641 levies a capitation tax of $1.50 per annum on every resident of the State not less than twenty-one years of age, except those pensioned by the State for military services, $1.00 to be applied to the aid of the public free schools and the residue to be paid by the State into the treasury of the county or city in which it was collected, to be used as the authorities thereof shall determine.

[2] The statement of the President is contained in a message to Congress which was referred to the Committee on the Census and printed as Document No. 45, H.R., 77th Cong., First Session, 16th Decennial Census of Population.

The total number of representatives is fixed at 435 by the Act of February 14, 1912, 37 Stat. 1728, 2 U.S.C.A. § 2.

likened to that which was considered by the Supreme Court of Appeals of Virginia in Brown v. Saunders, 159 Va. 28, 166 S. E. 105, wherein the Virginia Apportionment Act of 1932 was declared to be in conflict with the State Constitution in that it failed to divide the State into districts composed of as nearly an equal number of inhabitants as possible, and the court held that it was necessary for the electors in the State at large to select all nine members to represent the State in the national legislature. See also, Carroll v. Becker, 285 U. S. 380, 52 S.Ct. 402, 76 L.Ed. 807; Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L. Ed. 795.

Section 22(c) (5) amended by § 1 of the Act of Congress of November 15, 1941, Ch. 470, 55 Stat. 761, 762, 2 U.S.C.A. § 2a(c) (5), provides for such a contingency by directing that if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large. Since the number of districts into which the State of Virginia is divided under the existing State law exceeds the number of Representatives in Congress to which the State is entitled, it follows that they must be elected from the State at large. See, Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795. Moreover, under Article 1, Section 2, clause 3 of the Federal Constitution each State shall have at least one Representative in Congress.

The conclusion derived by the appellant from the aforegoing argument is that all Representatives in Congress from Virginia must be elected by the voters of the State at large and that the Secretary of State should have certified his candidacy. It is manifest that the underlying purpose of this argument and of the instant suit is to bring about the abolition of the Virginia poll tax law. A direct attack upon its constitutionality is not made, doubtless because the decisions generally hold that a State statute which imposes a reasonable poll tax as a condition of the right to vote does not abridge the privileges or immunities of citizens of the United States which are protected by the Fourteenth Amendment. The privilege of voting is derived from the State and not from the national government. The qualification of voters in an election for members of Congress is set out in Article 1, Section 2, Clause 1 of the Federal Constitution which provides that the electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State Legislature. The Supreme Court in Breedlove v. Suttles, 302 U.S. 277, 283, 58 S.Ct. 205, 82 L.Ed. 252, held that a poll tax prescribed by the Constitution and statutes of the State of Georgia did not offend the Federal Constitution. The court said (302 U.S. 277 at page 283, 58 S.Ct. at page 208, 82 L.Ed. 252):

"To make payment of poll taxes a prerequisite of voting is not to deny any privilege or immunity protected by the Fourteenth Amendment. Privilege of voting is not derived from the United States, but is conferred by the state and, save as restrained by the Fifteenth and Nineteenth Amendments and other provisions of the Federal Constitution, the state may condition suffrage as it deems appropriate. Minor v. Happersett, 21 Wall. 162, 170 et seq., 22 L.Ed. 627; Ex parte Yarbrough, 110 U. S. 651, 664, 665, 4 S.Ct. 152, 28 L.Ed. 274; McPherson v. Blacker, 146 U.S. 1, 37, 38, 13 S.Ct. 3, 36 L.Ed. 869; Guinn v. United States, 238 U.S. 347, 362, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124. The privileges and immunities protected are only those that arise from the Constitution and laws of the United States and not those that spring from other sources. Hamilton v. Regents, 293 U.S. 245, 261, 55 S.Ct. 197, 203, 79 L.Ed. 343."

See also, Pirtle v. Brown, 6 Cir., 118 F. 2d 218, 139 A.L.R. 557, certiorari denied 314 U.S. 621, 62 S.Ct. 64, 86 L.Ed. 499; Annotation, 139 A.L.R. 561; Campbell v. Goode, 172 Va. 463, 2 S.E.2d 456; Stone v. Smith, 159 Mass. 413, 34 N.E. 521; McPherson v. Blacker, 146 U.S. 1, 39, 13 S. Ct. 3, 36 L.Ed. 869.

It is the contention of the appellant, however, that even if the Virginia poll tax law does not offend the first section of the Fourteenth Amendment, nevertheless the statute falls within the terms of the second section of the Amendment by abridging the right of citizens of the United States to vote, and therefore the Apportionment Act of Congress of 1941 and the Redistricting Act of the State Legislature, which failed to take into account the effect of the poll tax act, are invalid with the consequences outlined above. We think that this contention presents a question political in its nature which must be determined by the legislative branch of the government and is not justiciable. It is well known that the elective franchise has been limited or denied to citizens in vari-

ous States of the union in past years, but no serious attempt has been made by Congress to enforce the mandate of the second section of the Fourteenth Amendment, and it is noteworthy that there are no instances in which the courts have attempted to revise the apportionment of Representatives by Congress. Willoughby, Constitution, 2d Ed. pp. 626, 627.

It was held in Luther v. Borden, 7 Howard 1, 42, 12 L.Ed. 581, that it rests with Congress to decide whether a State government is republican in form, as contemplated by Article 4, Section 4 of the Federal Constitution; and in Coleman v. Miller, 307 U.S. 433, 456, 59 S.Ct. 972, 83 L.Ed. 1385, 122 A.L.R. 695, it was decided that the efficacy of a ratification of a proposed amendment to the Federal Constitution by a state legislature which had previously rejected it is a question for the political departments. In the last mentioned case it was said (pages 454-455 of 307 U.S. 433) that in determining whether a question is political and not justiciable, the dominant considerations are the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for judicial determination. It is our opinion that the question involved in the pending case, viewed from either aspect, will be seen to be political. It is quite clear that we lack the means of deciding whether or not Virginia is entitled to nine Representatives in Congress upon the information before us. It is true that the complaint contains the allegation that the effect of the Virginia poll tax is to disenfranchise sixty per cent of the citizens within the State. But we have no means of knowing the effect upon the suffrage of the restrictions imposed by the statutes of other states in the form of poll taxes or other qualifications for voting. We could not say, even if the question lay within our power, whether Virginia is entitled to nine out of the total number of four hundred and thirty-five Representatives provided by Congress without ascertaining the number to which other states are entitled when the provisions of the second section of the Fourteenth Amendment are taken into consideration.

■ It is equally true that the court is without power to reduce the number of Representatives fixed by Act of Congress or to decide in case the number of Representatives from Virginia should be reduced, what disposition should be made of the vacancies thus caused, or to what states they should be allotted in order to maintain the total ordained by Congress. It is clear that there can be no finality on any of these questions until Congress exercises the authority and performs the duty entrusted to it by the Constitution. It is true that the pending case takes the form of a suit for damages against the Secretary of State for failure to certify the candidacy of the appellant, but in order to fix liability upon the Secretary, it would be necessary for this court to hold that notwithstanding the Act of Congress, the number of Representatives from Virginia and therefore of other states in the Union as set out in the Act of Congress is erroneous and should be changed. This determination we have no power to make.

The case cannot be distinguished in principle from that before the Supreme Court of Nebraska in State v. Boyd, 36 Neb. 181, 54 N.W. 252, 19 L.R.A. 227, where an action was brought to compel the Governor of the State to call an election for three additional members of Congress to fill vacancies caused by the failure of Congress to allot to the State the number of Representatives to which it was entitled under the census of 1890. In dismissing the action the court said: (36 Neb. at pages 188, 189, 54 N.W. at page 254, 19 L.R.A. 227)

" * * * There is much force in the objection that the states entitled to increased representation are thereby deprived of the same for two years. The question, however, is political, rather than judicial, and it is difficult to perceive in what way the courts can remedy the defect. With the present improved modes of taking the census and classifying the returns, the population of each state can be ascertained within a few months after the actual enumeration, so that the apportionment can be made in December or January following the taking of the census. It would seem but justice that this should take effect in the succeeding congress, and we may confidently trust to that spirit of fairness so characteristic of the American people, to correct the wrong. The courts, however, have no authority to declare that a greater number of representatives shall be elected and admitted to congress than the statute specifies; and the writ must be denied, and the action dismissed."

See also, Daly v. Madison County, 378 Ill. 357, 365–366, 38 N.E.2d 160.

The judgment of the District Court will be affirmed.