# Richmond

## T. O. CAMPBELL V. JOHN C. GOODE, COMMISSIONER OF REVENUE FOR THE CITY OF RICHMOND.

April 17, 1939.

Record No. 2141.

Present, All the Justices.

The opinion states the case.

*Edward T. Haynes,* for the petitioner.

*Oscar L. Shewmake* and *J. Vaughan Gary,* for the respondent.

SPRATLEY, J., delivered the opinion of the court.

The petitioner, T. O. Campbell, a resident of Virginia for more than three years, in February, 1939, made application to the defendant, John C. Goode, Commissioner of Revenue for the City of Richmond, for a State revenue license, as provided by sec. 159 of the Tax Code of Virginia, Code 1936, Appendix, p. 2443, to practice law for the year 1939, he being otherwise duly qualified as an attorney at law. In making the application, Campbell certified that he had not paid his capitation or poll tax for the year 1937. Issuance of the license was refused on the ground that the payment of such poll tax was a prerequisite to the right to secure the license. Thereupon Campbell filed his petition with this court, praying that a writ of mandamus be awarded against John C. Goode, Commissioner of the Revenue, requiring him to grant the license upon payment of the amount stipulated by sec. 159 of the Tax Code of Virginia.

The question for our decision is whether section 128 of the Tax Code of Virginia, Code 1936, Appendix, p. 2436, requiring the prepayment of certain poll taxes as a prerequisite to the right to obtain a license, is invalid and void as being in conflict with the Constitution of the State.

The title to article 2 of the Constitution of Virginia is "Elective Franchise and Qualifications for Office." Secs. 18, 19 and 20 thereunder relate to the qualifications of voters. One of the qualifications requires the payment of poll taxes within a certain period before one may register or vote. Section 22 exempts certain persons because of military service, from the payment of the poll tax as a condition of the right to vote. It further provides:

"The collection of the State poll tax assessed against any one shall not be enforced by legal process until the same has become three years past due."

Subsequently, in 1924 and by an amendment in 1926, the General Assembly enacted section 128 of the Tax Code. This section requires the prepayment of the State capitation or poll tax assessed or assessable against any person applying for any license or permit as a prerequisite of the

right to obtain the license or permit, and makes it incumbent upon the applicant to establish the fact that such tax has been paid by him "for the tax year immediately preceding the last preceding tax year to the tax year to which the license" or permit relates.

We think the meaning of the provision of section 22 of the Constitution providing that the collection of the poll tax shall not be enforced by legal process until the same has become three years past due is clear and unambiguous.

While the Constitution gives to the General Assembly the right to impose a poll tax, it specifically provides against its enforced collection by legal process until three years after it has become due. Its imposition was not intended primarily for the production of revenue, but to limit the right of suffrage to those who took sufficient interest in the affairs of the State to qualify themselves to vote. The taxpayer may pay it annually when it becomes due, or he may wait until one, two or three years after it becomes due before paying it. Any attempt to enforce its collection by legal process within that period is a violation of the specific provision giving him the choice or election to make payment thereof within one to three years.

What is the meaning of the phrase "legal process," as used in the Constitution? It is to be given its ordinary and commonly accepted meaning. This we ascertain not only from its words and the connection in which they are used, but from the history and circumstances of the adoption of the phrase itself.

In Webster's New International Dictionary, second edition, "process" is defined as meaning, in a narrow sense, "a writ or mandate;" in a broader sense as "the whole course of proceedings (in this sense being essentially equivalent to *procedure*)." It is also defined as having the general meaning of "a course of procedure; something that occurs in a series of actions or events."

In Vol. 2 of the Debates Constitutional Convention of 1901-1902, page 2937, we find that the article relating to the right of suffrage from which section 22 of the Con-

stitution was written, as originally offered and adopted contained the following language: "but the collection of said poll tax shall not be enforced by distress or otherwise, until it shall have become three years past due." This language was contained in the Glass Report, which was adopted, printed and referred to the Committee on Final Revision and Adjustment (p. 2958). This committee made its report on May 22, 1902 (p. 3097). In making revisions and adjustments, the words of the phrase "by distress or otherwise" were changed to those of the phrase "by legal process," as it now appears in the Constitution. It is significant to note that in making its final report, the committee specifically stated that they "observed the rule of making no changes in the articles as they were adopted by the Convention, except such as are necessary or proper to give greater clearness and conciseness to the expression of what is believed to be the true intent and meaning of the Convention," and that such changes as were made related "generally to punctuation, diction and the arrangement and transposition of sentences, paragraphs, and sections so as to secure greater conciseness and perspicuity." It was stated with reference to the article on "The Elective Franchise," that "no substantial change in, or addition to, the instrument has been made, except when such amendments were clearly necessary to the efficient operation of the articles as they came to us from the Convention."

We are therefore strengthened and fortified in our opinion that the plain intent and meaning of section 22 of the Constitution is to prohibit any procedure by law to enforce the collection of poll taxes for the period limited in the Constitution.

Undoubtedly the State has the power to raise revenue by licensing business and professions, and to provide the conditions under which such licenses may be obtained. But such right must not be exercised in conflict with the provisions of the State Constitution. Under the guise of raising revenue or regulating business it cannot require that a tax be assessed or its collection made in violation of a

constitutional provision fixing the time within which such assessment or collection may be made.

■ Part of the sum demanded, in addition to the revenue tax prescribed by law for the privilege of practicing law, as a prerequisite for the issuance of a license to practice law, is a capitation or poll tax, and not a part of the license or revenue tax. Therefore, the provision for the punishment of a person who pursues his profession without payment of his poll tax is a means of enforcing the payment of such tax itself, or of the penalty provided for not paying it. There is hardly any more effective legal process or legal procedure of enforcement than one which will require a man to do a certain thing or go to jail.

A case which comes nearer to dealing with the points here involved than any other case to which we have been cited is that of *Royall* v. *Virginia*, 116 U. S. 572, 6 S. Ct. 510, 516, 29 L. Ed. 735, decided in 1886. While the facts in that case are not the same as here, the same principle is involved. There, a statute which sought to require the payment of license taxes in current monies of the United States instead of by other means of payment provided by a contract of the State was held invalid as an impairment of a valid contract and in conflict with the Constitution of the United States. The court further held that the manner in which it was sought to collect the license tax was a means of enforcing the payment of a debt or demand (such as is a poll tax, due and unpaid) due the State other than in the manner in which its payment was allowed by law. Mr. Justice Matthews, delivering the opinion of the court, said:

"As the sum demanded for the license is a tax, the provision for the punishment of one who pursues his profession without a license is a part of the revenue system of the State, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information. The present case, therefore, stands precisely,

so far as the constitutional questions arising in it are affected, as if it were a civil action, in which the Commonwealth of Virginia was plaintiff, seeking to recover the amount due on account of the tax and penalty. In that aspect no one would doubt that it would be a perfect defense that the defendant had previously paid the demand, or, what we have held to be legally equivalent, had tendered the amount in the coupons of the State, receivable in payment by an irrepealable contract, but which the appointed authorities of the State had wrongfully refused to receive."

We think it is worth noting that the assessment of the poll tax has no relation whatever to the right to practice law.
We are of opinion that section 128 of the Tax Code of Virginia is in violation of the letter, spirit and purpose of section 22 of the State Constitution. It is therefore unconstitutional and void. The prayer of the petitioner is granted, and the writ of mandamus will issue.

*Mandamus awarded.*