(925 P.2d 846)

No. 74,339

HIGH PLAINS OIL, LTD., *Plaintiff*, v. HIGH PLAINS DRILLING PROGRAM-1981, LTD.; HIGH PLAINS DRILLING PROGRAM-1982 Y.E., LTD.; FEDERAL DEPOSIT INSURANCE CORPORATION; and CARL CLARK, as BANKRUPTCY TRUSTEE OF THE BANKRUPTCY ESTATE OF HIGH PLAINS DRILLING PROGRAM-1981, LTD., Case No. 87-20972, *Defendants*, NATIONAL CITY BANK OF CLEVELAND, OHIO, *Appellant*, and BOARD OF COUNTY COMMISSIONERS OF NESS COUNTY, *Intervenor/Appellee.*

Opinion filed November 1, 1996.

*David L. Stutzman* and *Derrick L. Roberson*, of Arthur, Green, Arthur, Conderman & Stutzman, L.L.P., of Manhattan, for appellant.

*Larry D. Tittel*, county attorney, for appellee.

Before GERNON, P.J., WAHL, S.J., and DAVID W. KENNEDY, District Judge, assigned.

WAHL, J.: National City Bank of Cleveland, Ohio, (NCB) appeals the decision of the district court giving the Board of County Commissioners of Ness County, Kansas, (Ness County) priority in pro-

ceeds from partition of an oil and gas lease following an order in bankruptcy court modifying the automatic stay from the bankruptcy action of High Plains Drilling Program-1981, Ltd., (the 1981 program) a defendant in the original partition proceeding.

The plaintiff in the original action, High Plains Oil, Ltd., (High Plains) was a co-owner of the aforementioned oil and gas lease, along with the defendants, the 1981 program and High Plains Drilling Program-1982 Y.E. Ltd. (the 1982 program). NCB held a mortgage against the lease ownership rights of both High Plains and the 1981 program. In 1988, High Plains filed an action seeking to partition the various ownership interests in the lease. NCB filed a counterclaim, asserting that because a bankruptcy petition filed by the 1981 program in July 1987 remained unresolved, the partition action violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (1994).

Pursuant to an order filed in September 1988, the judge presiding over the 1981 program's bankruptcy action modified the automatic stay to allow the following:

"[A]ny party in interest in this case who is also a party to the partition actions [may] assert its claim against the Debtor's property in those actions [and] . . . the Debtor's interest in the . . . leases [may] be partitioned, sold, or otherwise disposed of in accordance with the orders of the state district courts."

The bankruptcy judge made this modification after concluding, pursuant to 11 U.S.C. § 362(d)(2), that the 1981 program had no equity in the lease and the lease was unnecessary to an effective reorganization of the debtor.

In October 1988, the district court filed an order appointing appraisers and authorizing the partition and sale of the oil and gas lease. The court's order determined that High Plains, the 1981 program, and the 1982 program possessed respective ownership interests in the lease of 12.5%, 72.9544%, and 14.5456%. The value of the lease was subsequently appraised at $19,250. It was sold for $40,600 in August 1989.

Three days after the sale of the lease, Ness County filed a motion to intervene in the partition action. The motion alleged Ness County had an outstanding $35,408.35 judgment against the 1981

program for property taxes assessed against the lease in 1983 and 1986. The district court granted Ness County's motion to intervene and, subsequently, issued an order confirming the sale of the lease.

On September 20, 1989, the district judge assigned to the case, Judge Worden, ordered distribution of costs, expenses, and attorney fees from the sale proceeds. The distribution of the remaining sum of $32,399.46 was to be determined at a later date. On September 25, 1989, Ness County filed a motion to determine priorities and distribute proceds. NCB filed an objection, arguing that the motion should be submitted to the bankruptcy court for determination.

Judge Worden's assignment to this case was canceled in December 1990. No action occurred on the case from the September 1989 order of distribution of costs and expenses until a status conference was set for January 22, 1991, by Judge Meeks. Counsel for NCB did not attend the conference but did submit a letter for the court's consideration. During the status conference, the court indicated that based on review of the case file, it would order that Ness County receive proceeds subject to further hearing. The county attorney prepared a proposed journal entry and distributed it to the court and all interested parties.

On February 6, 1991, NCB filed a motion objecting to the proposed journal entry on the grounds that it did not detail the basis for the court's decision and that it was based on a ruling made at a hearing at which NCB did not appear, thus depriving NCB of its right to due process. The court held a telephone hearing on NCB's objections on March 4, 1991, and, thereafter, signed the journal entry prepared earlier.

NCB appealed, and this court vacated and remanded the judgment in *High Plains Oil, Ltd. v. High Plains Drilling Program-1981, Ltd., et al.*, No. 69,742, unpublished opinion filed February 11, 1994. This court's decision was based on insufficient findings of facts and conclusions of law in the district court's journal entry, precluding meaningful appellate review.

On remand, the district court reviewed the file, considered the briefs and arguments from the parties, and issued a second journal entry in favor of Ness County on May 31, 1995. The court found

Ness County followed the correct procedures as set forth in K.S.A. 79-2101 in that tax warrants were filed with the clerk of the court for the 1983 and 1986 delinquent taxes on October 4, 1984, and October 14, 1987, respectively. The court held the partition statute, K.S.A. 60-1003, and statutes concerning the sale of personal property for taxes, specifically, K.S.A. 79-2109, K.S.A. 79-2110, and K.S.A. 79-2111, operated to give Ness County priority for its personal property tax lien. Further, the district court found jurisdiction and ordered proceeds from the sale of the oil and gas lease to be paid to Ness County to satisfy delinquent taxes, including all interest and penalties, with the remaining balance, if any, to be paid to NCB.

We must first determine what law should apply. NCB maintains the U.S. Bankruptcy Code should apply. NCB argues the bankruptcy court only allowed the partition sale to proceed and that the bankruptcy court had no intention of abandoning the proceeds from sale of the oil and gas lease; therefore, the proceeds remain in the bankruptcy estate. Ness County points to the plain language from the order modifying the automatic stay. The bankruptcy court clearly stated that any party in interest in the partition case would be allowed to assert its claim and the oil and gas lease could be "sold, or otherwise disposed of *in accordance with the orders of the state district courts.*" (Emphasis added.)

This issue poses a question of law where this court's review is unlimited. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

NCB's interpretation of the bankruptcy court's order ignores the court's finding under 11 U.S.C. § 362(d)(2)(A) and (B) that the 1981 program had no equity in the oil and gas leases and that the leases were not necessary to an effective reorganization because the debtor case was converted to a Chapter 7 liquidation. There is no language in the order reserving the proceeds from the sale of the lease to the bankruptcy estate. NCB's interpretation is not logical where the order granted relief from stay and allowed the lease to be "sold, or otherwise disposed of" and where the bankruptcy court found the debtor had no equity.

The order had the effect of removing the oil and gas lease from the bankruptcy estate. See 11 U.S.C. § 362(c)(1) (1994). Further, the order plainly states the lease should be sold and disposed of "in accordance with the orders of the state district courts." When the lease was removed from the bankruptcy estate and the partition action proceeded in state court, the bankruptcy court had no further control over the proceeds. Kansas state law must guide the distribution of the oil and gas lease sale proceeds.

The district court specifically found Ness County was entitled to priority in the 1981 program's interest in the partition proceeds under K.S.A. 79-2109, K.S.A. 79-2110, and K.S.A. 79-2111. As an initial finding, the district court found Ness County followed the applicable procedures for obtaining a tax warrant and judgment under K.S.A. 79-2101. NCB does not claim Ness County did not properly secure judgment but argues Ness County waived its right to proceed under special collection procedures for an oil and gas lease under K.S.A. 79-2101. Ness County could have notified the purchaser of the oil and gas runs to pay proceeds from the sale of any oil or gas to the county until delinquent taxes and costs were paid. NCB does not report the remaining provision in the statute which states in relevant part "but this exception shall not prevent the levy of an execution and sale of the leasehold interest or the physical personal property on any such lease for the payment of delinquent taxes owed by its owner." K.S.A. 79-2101.

NCB correctly states that oil and gas leases are not in the nature of real property, but rather are personal property. See *Utica Nat'l Bank & Trust Co. v. Marney*, 233 Kan. 432, 433, 661 P.2d 1246 (1983). Judgment liens attach to real property of the taxpayer and not to the oil and gas lease. K.S.A. 79-2101. A lien on property must be created by statute. *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 632, 802 P.2d 1231 (1990). K.S.A. 79-2109 and K.S.A. 79-2110 provide statutory authority for liens on personal property. K.S.A. 79-2111 establishes priority for delinquent taxes. Interpretation of statutes is a question of law, and this court's review of questions of law is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d at 283.

K.S.A. 79-2109 states in relevant part:

"If any owner of personal property after the date as of which personal property is assessed and before the tax thereon is paid, shall sell all of a class of the same to any one person, the tax for that year shall be a lien upon the property so sold, and shall at once become due and payable . . . ."

The statute plainly contemplates that if the "owner," determined from the date of assessment, sells the personal property, a lien is created. *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 514, 625 P.2d 494 (1981); *Palmer v. First Nat'l Bank of Kingman*, 10 Kan. App. 2d 84, 87, 692 P.2d 386 (1984). January 1 is the date of assessment for personal property taxes and the date to determine ownership. *Palmer*, 10 Kan. App. 2d at 87.

NCB argues, following *In re White Hat Feed, Inc.*, 67 Bankr. 851 (Bankr. D. Kan. 1986), and *Palmer*, that the ownership changed between the date of assessment and the date of sale because the lease became the property of the bankruptcy estate, and, therefore, Ness County could not have a tax lien on the property pursuant to K.S.A. 79-2109. Ness County contends High Plains is the real seller and High Plains, the 1981 program, and the 1982 program were the owners of the property at the time of assessment and at the time of sale.

Neither position clearly states the question. Both parties agree the 1981 program was one of the owners of the oil and gas lease in question on January 1 of the delinquent tax years 1983 and 1986. The 1981 program filed a voluntary bankruptcy petition in 1987. As part of the 1981 program's assets, the lease became part of the bankruptcy estate. While the 1981 program's interest in the lease did transfer between the date of assessment and the date of sale, NCB does not deal with the real question of who sold the oil and gas lease. Ness County incorrectly identifies the seller as High Plains, the 1981 program, and the 1982 program. These were the owners of the oil and gas lease as determined on January 1, 1983, and January 1, 1986.

High Plains initiated the partition action in the district court after the 1981 program filed for bankruptcy. As a creditor of the 1981 program and, therefore, a party in interest, NCB could petition the bankruptcy court for relief from the stay so that the par-

tition action could proceed. However, neither NCB nor the trustee sold the oil and gas lease. The real seller was the district court or, more technically, the sheriff on behalf of the court. See K.S.A. 60-1003(c)(4).

NCB quotes *White Hat Feed* to show how the bankruptcy court succinctly applied its facts to the proper question of who owned and who sold the property in question and not whether ownership changed hands:

"Here, the debtor was the owner of the property at the time of assessment. Upon the filing of the [bankruptcy] petition the debtor's property passed to the estate and the subject property was sold by the trustee. Thus, the owner of the property at the time of assessment was not also the seller and K.S.A. 79-2109 is rendered inapplicable." *In re White Hat, Inc.*, 67 Bankr. at 853.

In the case at hand, the 1981 program's interest in the lease passed to the bankruptcy estate but was released from that estate to the partition action and was sold by the sheriff under the direction of the district court.

The 1981 program, together with the 1982 program and High Plains, were the owners of the lease as of January 1, 1983, and January 1, 1986, the tax years in question, but they were not the sellers in the partition sale. Therefore, K.S.A. 79-2109 did not apply. Furthermore, while K.S.A. 79-2109 may create a lien upon the property sold if the owner is also the seller, there is no language which would give that lien priority over any other lien. The statute provides only that the tax will be due and payable immediately. The statute does not provide for payment of the taxes from the proceeds of the sale. K.S.A. 79-2109, by its terms, does not appear to affect the priority standing of a perfected secured creditor.

K.S.A. 79-2110 provides in relevant part:

"If any person in this state, after his or her personal property is assessed and before the tax thereon is paid, shall sell all of the same to any one person, and not retain sufficient *sic* to pay the taxes thereon, the tax for that year shall be a lien upon the property so sold, and shall at once become due and payable . . . ."

Both parties agree that although the wording is slightly different, this statute requires that the owner at the time of assessment must also be the seller. The court in *Robbins* held this statute to apply

to bulk sales. 229 Kan. at 514. Neither party offers any new arguments, and *Robbins* indicates this statute is not relevant here.

K.S.A. 79-2111 provides: .

"If the personal property of any taxpayer be seized by any legal process and if the taxpayer does not have a sufficient amount of other property to pay the taxes which is exempt from levy and sale under such legal process, then the taxes on the personal property of such taxpayer shall at once fall due, and be paid from the proceeds of the sale of the property so taken on such legal process, in preference to all other claims against it."

This statute and the term "seizure" were first analyzed in *Robbins*, where a debtor voluntarily surrendered collateral upon default to the creditor bank. "Seizure" is defined in Black's Law Dictionary 1359 (6th ed. 1990):

"The act of taking possession of property, *e.g.*, for a violation of law or by virtue of an execution of a judgment. Term implies a taking or removal of something from the possession, actual or constructive, of another person or persons. [Citation omitted.]

"The act performed by an officer of the law, under the authority and exigence of a writ, in taking into the custody of the law the property, real or personal, of a person against whom the judgment of a competent court has passed . . . . Or the act of taking possession of goods in consequence of a violation of public law."

In the view of our Supreme Court, a "voluntary surrender of property does not comport with the concept of a seizure, which implies a forcible taking under authority of law." *Robbins*, 229 Kan. at 515.

The court then turned to "legal process" and defined it as "a writ, warrant, summons, order or mandate; proceedings which invoke the aid of judicial process or decree." 229 Kan. at 515.

The statute next came under consideration in *Palmer*, and this court ruled that where personal property under a voluntary bankruptcy came under ownership of the bankruptcy estate and the bank obtained relief from the stay in order to sell collateral, the entire process of bankruptcy met the definition of legal process. The court held that K.S.A. 79-2111 was triggered and the delinquent taxes became payable from the proceeds of the sale. The *Palmer* court did not specifically separate and consider the term "seizure" in its analysis of "seized by legal process." 10 Kan. App. 2d at 89-90.

The United States Bankruptcy Court in *White Hat Feed* found that a debtor's petition in bankruptcy operates to voluntarily surrender property; therefore, K.S.A. 79-2111 would not operate to give the county priority for delinquent personal taxes. We must consider the effect of use of the term "seizure" in distinction from *Palmer*, and, thus, we find K.S.A. 79-2111 inapplicable because the 1981 program voluntarily surrendered its interest in the oil and gas lease to the bankruptcy estate. The bankruptcy court voluntarily surrendered the lease to the district court. The partition action is the legal process this court must look at. The lease did not become subject to the jurisdiction of the district court by any forcible taking but by a surrender from the bankruptcy court. "A voluntary surrender of property does not comport with the concept of a seizure." *Robbins*, 229 Kan. at 515.

K.S.A. 79-2020 provides in relevant part:

"If any owner of personal property surrenders or transfers such property to another after the date such property is assessed and before the tax thereon is paid, whether by voluntary repossession or any other voluntary act in reduction or satisfaction of indebtedness, then the taxes on the personal property of such taxpayer shall fall due immediately, and a lien shall attach to the property so surrendered or transferred, and shall become due and payable immediately. Such lien shall be in preference to all other claims against such property."

The district court did not rely on this statute when ruling that Ness County had priority over NCB with respect to the proceeds from the 1981 program's interest in the oil and gas lease. From the record, it does not appear this statute was presented to the district court. Since it did not enter into the trial court's consideration, it will not be first considered by this court on appeal.

Reversed.