No. 74,339

HIGH PLAINS OIL, LTD., *Plaintiff*, v. HIGH PLAINS DRILLING PROGRAM-1981, LTD.; HIGH PLAINS DRILLING PROGRAM-1982 Y.E., LTD.; FEDERAL DEPOSIT INSURANCE CORPORATION; CARL CLARK, as BANKRUPTCY TRUSTEE OF THE BANKRUPTCY ESTATE OF HIGH PLAINS DRILLING PROGRAM-1981, LTD.; *Defendants*, NATIONAL CITY BANK OF CLEVELAND, OHIO, *Appellant*, and BOARD OF COUNTY COMMISSIONERS OF NESS COUNTY, *Intervenor/Appellee*.

(946 P.2d 1382)

Opinion filed October 31, 1997.

*Derrick L. Roberson*, of Arthur, Green, Arthur, Conderman & Stutzman, L.L.P., of Manhattan, argued the cause, and *David L. Stutzman*, of the same firm, was with him on the brief for appellant.

*Larry D. Tittel*, county attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This case presents a question of priority between a county government's judgment liens for personal property taxes and a bank's prior perfected mortgage in proceeds from the partition sale of an oil and gas lease. The trial court held for the county. The Court of Appeals reversed, holding that K.S.A. 79-2111 did not give the county priority because the property was not "seized by any legal process." We granted the county's petition for review.

This case began with a partition action filed on April 14, 1988, by High Plains Oil, Ltd., (High Plains), a co-owner of an oil and gas lease located in Ness County, against two other co-owners, High Plains Drilling Program-1981, Ltd., (1981 program) and the High Plains Drilling Program-1982 Y.E., Ltd. (1982 program); the National City Bank of Cleveland, Ohio (Bank); and the Federal Deposit Insurance Corporation (FDIC). The Bank filed its answer

to the partition and a counterclaim against High Plains and the 1981 program seeking collection of monies in excess of $1,400,000 secured by 1982 and 1984 mortgages against the interest of the 1981 program and the general partner, High Plains. The Bank also filed a cross-claim against the FDIC. This cross-claim was dismissed with prejudice and has no bearing upon this appeal. The FDIC answered, claiming a perfected mortgage interest against the interest of High Plains. While the FDIC remained a party to the partition action, it voiced no objection to the final journal entry entered by the district court, wherein the court stated: "The only parties remaining in the case are Ness County and National City Bank of Cleveland, Ohio." In this appeal, we, like the Court of Appeals, deal only with the question of priority between Ness County and the Bank.

Prior to the filing of the partition suit, the 1981 program filed for bankruptcy on July 7, 1987. The trustee in bankruptcy filed an answer in the partition action on behalf of the bankruptcy estate of the 1981 program and asked for dismissal of the partition action because the state action violated 11 U.S.C. § 362(a)(1) and (3) (1994), calling for an automatic stay of actions affecting the bankruptcy estate. The Bank applied for a lifting of the stay, and the United States Bankruptcy Court for the District of Kansas entered the following order modifying the automatic stay on September 26, 1988:

"2. The movants [Bank] are creditors of the Debtor with allowed claims aggregating at least $1,405,457.71. Those claims are secured by liens against the Debtor's property, including two oil and gas leases known as the Clark and Fritzler A leases [the leasehold interest involved in this case] and described in the movants' motion.

"3. The value of the Debtor's interests in the Clark and Fritzler A leases is far less than the aggregate amount of the movants' claims against the Debtor. The Debtor thus has no equity in the Clark and Fritzler A leases. Those leases are also unnecessary for an effective reorganization because of the conversion of the Debtor's case to a liquidation proceeding.

"4. The Clark and Fritzler A leases are the subjects of partition actions in Kansas state court. Those actions cannot proceed against the Debtor's property interests in those leases without relief from the automatic stay.

"Based on the foregoing findings, the Court concludes that:

"(a) The movants' motion for relief from the automatic stay is well taken and should be granted; and

"(b) The automatic stay imposed by 11 U.S.C. § 362 should be modified to allow any party in interest in this case who is also a party to the partition actions to assert its claim against the Debtor's property in those actions to permit the Debtor's interests in the Clark and Fritzler A leases to be partitioned, sold, or otherwise disposed of in accordance with the orders of the state district courts."

The state court partition suit proceeded. On October 21, 1988, the district court described the lease property and determined that High Plains owned a .125 interest, the 1981 program owned a .729544 interest, and the 1982 program owned a .145456 interest in the lease. The district court appointed commissioners to partition the property among the parties according to their respective interests, but if partition could not be made without manifest injury or was for any reason impracticable, the commissioners were directed to appraise the value of the property and report their conclusions to the court. The appraisers reported that partition could not be made without manifest injury and valued the lease at $19,250. Pursuant to the district court's order of sale, the lease was sold on August 14, 1989, by the Sheriff of Ness County to Apache Drilling Co., Inc., for $40,600.

Three days after the sale of the lease, Ness County filed a motion to intervene in the partition action, alleging that it had an unsatisfied judgment of $35,408.35 for unpaid personal property taxes against the 1981 program for 1983 and 1986. The district court granted Ness County's motion to intervene and issued an order confirming the sale of the lease. District Judge Charles Worden was assigned to hear the partition action. Judge Worden ordered distribution of costs, expenses, and attorney fees from the sale proceeds and stated that the remaining amount would be distributed at a later date.

Ness County filed a motion on September 25, 1989, to determine priorities and distribute the proceeds. The Bank objected, arguing that the bankruptcy court should determine the priorities and the distribution of proceeds. No further action occurred for some time. Judge Worden's assignment was canceled in December 1990. Administrative Judge J. Byron Meeks set the case for a status

conference on January 22, 1991. The Bank's counsel was excused from attending the conference and submitted its position by letter. At the conference, the parties attending indicated to the court that they believed Judge Worden had resolved the distribution matter and that Ness County would be awarded priority although no order had been issued. The court decided to handle the matter by having Ness County prepare a journal entry and allowing the Bank to file its objections to the journal entry.

Ness County prepared the journal entry. The Bank filed an objection, alleging that the journal entry did not detail a basis for the court's decision and that it violated the Bank's right to due process because it was based on a ruling made at a hearing from which the Bank had been excused. A telephone conference was held, after which the court signed the journal entry awarding Ness County priority in the distribution of proceeds. The Bank appealed.

The Court of Appeals vacated and remanded the judgment on the grounds that there were insufficient findings of fact and conclusions of law to allow a meaningful review. *High Plains Oil, Ltd. v. High Plains Drilling Program-1981, Ltd.*, No. 69,472, unpublished opinion filed February 11, 1994.

On remand, the district court, after a review of the file and the briefs and arguments of the parties, issued a second journal entry awarding Ness County priority. After outlining the steps taken in the partition action, the district court found:

"6. On August 18, 1989, after the partition sale and payment of proceeds into the court, Ness County, Kansas, filed a Motion to Intervene to assert its claim based upon tax warrants filed with the District Court in Ness County. Ness County sought a priority for its tax liens under K.S.A. 79-2101, 79-2109, 79-2110, 79-2111 and 79-2020.

"7. The only parties remaining in the case are Ness County and National City Bank of Cleveland, Ohio.

"8. National City Bank asserts that as a secured creditor of defendant High Plains Drilling Program 1981 and High Plains Drilling Program 1982 YE, it is entitled to all proceeds from the partition sale held on August 14, 1989.

"9. The court finds there is no question that Ness County followed the correct procedures as set forth in K.S.A. 79-2101 in that tax warrants were filed with the Clerk of the Court for the 1983 and 1986 delinquent taxes on October 4, 1984, and October 14, 1987, respectively.

"10. K.S.A. 60-1003, the partition statute, is clear that only owners are necessary parties to the action. National City Bank is not an owner under the law, but is merely a lienholder; therefore K.S.A. 79-2109 and K.S.A. 79-2110 are operative and Ness County has a priority status for its personal property tax lien.

"11. The partition action resulted in the sale of the ownership interest in the oil and gas leases. This court has jurisdiction to distribute the proceeds of the Sheriff's Sale in payment of all costs, fees and liens and distribute the balance to the owners of the lease according to their respective interests as determined by K.S.A. 60-1003(c)(1) and K.S.A. 60-1003(c)(5).

"12. K.S.A. 79-2111 establishes that the tax lien of Ness County should be satisfied from the partition sale proceeds prior to any payments to lienholders."

Based upon the above findings, the court ordered:

"[T]he proceeds of the sale of the oil and gas lease above-described shall be paid to Ness County, Kansas, to satisfy the delinquent taxes on the lease, including all interest and penalties, and the balance of said proceeds, if any, should be paid to National City Bank of Cleveland, Ohio, pursuant to K.S.A. 79-2111 and K.S.A. 60-1003."

The Bank again appealed.

The Court of Appeals reversed the decision of the district court and determined that Ness County's claims did not have priority. *High Plains Oil, Ltd. v. High Plains Drilling Program-1981, Ltd.,* 22 Kan. App. 2d 968, 972-76, 925 P.2d 846 (1996). The Court of Appeals found that the district court was correct in holding that it, not the bankruptcy court, had jurisdiction to determine priorities and also that Ness County had followed the proper procedures for the filing of its liens. 22 Kan. App. 2d at 970-71. After an analysis of the provisions of K.S.A. 79-2109, K.S.A. 79-2110, and K.S.A. 79-2111, the Court of Appeals concluded that the district court had erred in determining that K.S.A. 79-2109, K.S.A. 79-2110, and K.S.A. 79-2111 operated to give Ness County priority. 22 Kan. App. 2d at 974-76.

The Court of Appeals determined that K.S.A. 79-2109 did not apply because the property owners were not the "sellers" as required by the statute. Instead, the Court of Appeals held that the "seller" of the property was the sheriff on behalf of the court. 22 Kan. App. 2d at 974. The Court of Appeals determined that K.S.A. 79-2110 applied only to bulk sales and also required that the owner of the personal property be the seller. 22 Kan. App. 2d at 974-75.

The district court had based its determination that Ness County was entitled to priority upon K.S.A. 79-2111 and K.S.A. 60-1003. The Court of Appeals found "K.S.A. 79-2111 inapplicable because the 1981 program voluntarily surrendered its interest in the oil and gas lease to the bankruptcy estate. The bankruptcy court voluntarily surrendered the lease to the district court." 22 Kan. App. 2d at 976. Thus, the Court of Appeals concluded that " '[a] voluntary surrender of property [from the bankruptcy court] does not comport with the concept of a seizure' " as that term is used in K.S.A. 79-2111. 22 Kan App. 2d at 976. In this conclusion, we believe the Court of Appeals erred. For the reasons set forth below, we reverse and remand this case for further proceedings.

## DISCUSSION AND ANALYSIS

Ness County's petition for review asked this court to review the Court of Appeals' rulings regarding the application of K.S.A. 79-2109, K.S.A. 79-2110, and K.S.A. 79-2111, as well as the Court of Appeals' refusal to address K.S.A. 79-2020. Our grant of review incorporates all of the above-referenced statutes.

Resolution of the issues presented necessarily requires the construction of the statutes involved. The interpretation of a statute is a question of law, and our review is unlimited. *State v. Arculeo,* 261 Kan. 286, Syl. ¶ 1, 933 P.2d 122 (1997).

K.S.A. 79-2109, -2110, -2111, and -2020 create liens on the personal property of the taxpayer in favor of the county or other taxing authority as the result of unpaid taxes on personal property. Oil and gas leases are personal property. K.S.A. 79-329; see *Utica Nat'l Bank & Trust Co. v. Marney,* 233 Kan. 432, 433, 661 P.2d 1246 (1983). A lien on personal property must be created by statute, and unless the facts establish the applicability of the statute, no lien exists. See *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs,* 247 Kan. 625, 632-33, 802 P.2d 1231 (1990).

A. K.S.A. 79-2109

This statute provides:

"If any owner of personal property after the date as of which personal property is assessed and before the tax thereon is paid, shall sell all of a class of the same

to any one person, the tax for that year shall be a lien upon the property so sold, and shall at once become due and payable, and the county treasurer shall at once issue a tax warrant for the collection thereof, and the sheriff shall forthwith collect it as in other cases. The property so sold shall be liable in the hands of the purchaser for such tax, but in the event that a purchaser shall pay the tax or any part thereof or, if said property be seized and sold for such tax the seller thereof, shall be civilly liable to the purchaser for the amount of the taxes the purchaser has paid or the amount of taxes due on the property so seized; but if the property be sold in the ordinary course of retail trade it shall not be so liable in the hands of the purchasers."

The Court of Appeals determined that K.S.A. 79-2109 was inapplicable because it requires that the owner of the personal property at the time of the tax assessment be the seller of such property and that none of the owners were sellers. 22 Kan. App. 2d at 974. We agree. It is clear both from the plain language of the statute and from our own case law that in order for K.S.A. 79-2109 to apply, the owner of the property at the time of the tax assessment must also be the seller. See K.S.A. 79-2109; *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 514, 625 P.2d 494 (1981).

Several cases in Kansas have addressed the question of who is to be considered the seller under K.S.A. 79-2109 in a variety of situations. In *Robbins*, we held that where the owner at the time of assessment defaulted on its note to the bank and voluntarily surrendered its collateral to the bank, and where the bank subsequently sold the collateral, the bank and not the owner was the seller of the collateral. K.S.A. 79-2109 was, therefore, inapplicable. 229 Kan. at 514.

Later, in *Palmer v. First Nat'l Bank of Kingman*, 10 Kan. App. 2d 84, 88, 692 P.2d 386 (1984), the Court of Appeals found that where the owner at the time of the tax assessment was a bankruptcy estate, and where the bankruptcy court then determined that the bank was entitled to the property which the bank then sold, the bank was the seller and K.S.A. 79-2109 did not apply.

The United States Bankruptcy Court has also construed K.S.A. 79-2109. In *In re White Hat Feed, Inc.*, 67 Bankr. 851, 853 (Bankr. D. Kan. 1986), the court found that where the owner of the property at the time of the assessment files for bankruptcy and the

property is sold by the bankruptcy trustee, the owner is not the seller and K.S.A. 79-2109 is not applicable.

Ness County, both in its brief before the Court of Appeals and in its petition for review, argues that these cases are distinguishable. According to Ness County, no ownership change occurred. High Plains, the 1981 program, and the 1982 program were the owners of the property and remained owners of the property until the sale. It is true that no ownership change occurred. However, this argument misses the point. While High Plains, the 1981 program, and 1982 program were the owners of the lease, they were not the sellers of the lease under the provisions of K.S.A. 79-2109. Instead, the lease was sold in the partition action by the sheriff pursuant to court order. The Court of Appeals' conclusion that the seller of the property was not the owner of the property and that K.S.A. 79-2109 was not applicable is a correct statement of the law.

## B. K.S.A. 79-2110

This statute provides:

"If any person in this state, after his or her personal property is assessed and before the tax thereon is paid, shall sell all of the same to any one person, and not retain sufficient to pay the taxes thereon, the tax for that year shall be a lien upon the property so sold, and shall at once become due and payable, and the county treasurer shall at once issue a tax warrant for the collection thereof, and the sheriff shall forthwith collect it as in other cases. The one owing such tax shall be civilly liable to any purchaser of such property for any taxes he or she owes thereon, but the property so purchased shall be liable in the hands of the purchaser or purchasers for such tax . . . ."

In *Robbins,* this court indicated that K.S.A. 79-2110 was intended to apply only to bulk sales of personal property. 229 Kan. at 514. There was no bulk sale in this case. Further, K.S.A. 79-2110, like K.S.A. 79-2109, requires that the one selling the personal property must be the owner of the personal property at the time the property was assessed. The personal property in this case was sold by the sheriff pursuant to court order, not by the owners of the lease. The Court of Appeals was correct in its conclusion that K.S.A. 79-2110 did not apply.

## C. K.S.A. 79-2111

This statute provides:

"If the personal property of any taxpayer be seized by any legal process and if the taxpayer does not have a sufficient amount of other property to pay the taxes which is exempt from levy and sale under such legal process, then the taxes on the personal property of such taxpayer shall at once fall due, and be paid from the proceeds of the sale of the property so taken on such legal process, in preference to all other claims against it."

In short, this statute would provide priority for the county where the personal property has been seized by any judicial process and the taxpayer does not have other property sufficient to pay the tax. There is no question that the 1981 program had no other property sufficient to pay the tax. The question before the Court of Appeals was whether the taxpayer's personal property was "seized by any judicial process" in the partition action.

The Court of Appeals held that K.S.A. 79-2111 was inapplicable and stated:

"[T]he 1981 program voluntarily surrendered its interest in the oil and gas lease to the bankruptcy estate. The bankruptcy court voluntarily surrendered the lease to the district court. The partition action is the legal process this court must look at. The lease did not become subject to the jurisdiction of the district court by any forcible taking but by a surrender from the bankruptcy court. 'A voluntary surrender of property does not comport with the concept of a seizure.' *Robbins*, 229 Kan. at 515." 22 Kan. App. 2d at 976.

The Court of Appeals is correct that the debtor, the 1981 program, voluntarily surrendered its interest in the lease to the bankruptcy court by filing its petition in bankruptcy. Upon filing for bankruptcy, all of the 1981 program's interest in the lease vested in the bankruptcy estate. However, the bankruptcy court lifted the automatic stay, specifically releasing any interest the bankruptcy estate had in the lease. Contrary to the conclusion of the Court of Appeals, the bankruptcy court did not surrender the leasehold interest to the state district court, but instead the lifting of the stay merely allowed the partition suit to proceed. While the debtor had no equitable interest in the lease because of overriding debt, the

1981 program, upon the lifting of the automatic stay, was a partial legal owner of the leasehold interest.

The conclusion of the Court of Appeals that "[t]he lease did not become subject to the jurisdiction of the district court by any forcible taking but by a surrender from the bankruptcy court," 22 Kan. App. 2d at 976, is an erroneous one. The lifting of the automatic stay put the debtor, the 1981 program, in much the same position with reference to its interest in the lease as it had been in before the bankruptcy was filed. Thus, its interest became subject to the state court partition action.

The question we must resolve is whether the provisions of K.S.A. 79-2111, under the facts of this case, encompass the partition action. In order for the provisions of K.S.A. 79-2111 to apply, the personal property of the taxpayer must "be seized by any legal process." If all provisions of K.S.A. 79-2111 are met, the taxes on the personal property shall at once fall due and be paid from the proceeds of the sale of the property so taken on such legal process in preference to all other claims against it.

The interest of the 1981 program in the lease is personal property. K.S.A. 79-329. The 1981 program did not file the partition action; instead, the action was filed by High Plains. In a partition action, the court determines the interest of the respective parties and appoints commissioners to appraise, and where it is impossible to partition in kind, as in this case, the court orders a sale of the personal property, with division subject to outstanding liens of the respective parties.

In *Robbins*, we held that "[a] voluntary surrender of property does not comport with the concept of a seizure, which implies a forcible taking under authority of law." 229 Kan. at 515. We have concluded that the interest of the 1981 program was not voluntarily surrendered but rather became subject to the partition suit when the bankruptcy court lifted the automatic stay.

We acknowledge that a partition action, such as the one in this case, does not amount to a "forcible taking under authority of law." However, we believe that the concept of "seizure" must be viewed in the context of the language used in K.S.A. 79-2111, "seized by any legal process."

We noted in *Robbins*:

"More important [than the concept of seizure], however, is our interpretation of 'legal process.' The term legal process is to be given its 'ordinary and commonly accepted meaning.' *Campbell v. Goode*, 172 Va. 463, 466, 2 S.E.2d 456 (1939).

"In *State v. Wagoner*, 123 Kan. 586, 588, 256 Pac. 959 (1927), this court was asked to construe the phrase 'legal process' as it appeared in R.S. 1923, 21-431. The court stated:

'Process . . . means a warrant, writ, order, mandate, or other formal writing, issued by some court, body, or official having authority to issue process, and legal process means process not merely fair on its face, but in fact valid.'

"Various jurisdictions have defined legal process and the term is generally used to describe proceedings begun by a writ, warrant, summons, order or mandate; proceedings which invoke the aid of judicial process or decree. [Citations omitted.]" 229 Kan. at 515.

Because the collateral in *Robbins* was voluntarily surrendered to the bank and sold by the bank without intervention of the court, we concluded that the taking of possession under those circumstances was "a procedure independent of legal process" and, therefore, K.S.A. 79-2111 did not apply. 229 Kan. at 516. The possession of the vehicles in *Robbins* was "accomplished without the aid of judicial process." 229 Kan. at 516.

What occurred in this case is far different. High Plains filed a partition action against the 1981 program and others; the court determined and made orders specifying the interest of the respective parties and directing partition. K.S.A. 60-1003(c). The court appointed three commissioners to partition but ordered that if partition could not be made without manifest injury, or if partition would be for any reason impracticable, the commissioners were to value the property and report to the court. After receiving and approving the report of the commissioners in this case, the court, under the provisions of K.S.A. 60-1003(c)(4), ordered the sheriff to sell the working interests in the oil and gas lease in the manner provided for sale of property on execution.

The partition action in this case meets the definition of "seized by *any* legal process" as defined in *Robbins*, for it is a proceeding which invokes the aid of judicial process or decree. Moreover, in

this case, all of the working interests in the oil and gas lease were sold pursuant to court order by the sheriff in the manner provided for sale of property on execution.

The 1981 program was a defendant in the partition action; the district court assumed jurisdiction over the property and ordered the sale of the same. Under these circumstances, we conclude that the personal property of the 1981 program taxpayer was seized by legal process in accord with the provisions of K.S.A. 79-2111. Thus, the trial court was correct in that its determination that the provisions of K.S.A. 79-2111 applied, and the county is entitled to the proceeds of the sale of the property so taken on such legal process, in preference to all other claims against it.

## D. K.S.A. 79-2020

The Court of Appeals refused to consider whether K.S.A. 79-2020 would give priority to Ness County because the district court did not rely on that statute in its ruling, and the Court of Appeals concluded that "it does not appear this statute was presented to the district court." 22 Kan. App. 2d at 976. While we conclude that the record establishes that this issue was raised before the district court, we need not address the question based upon our decision that K.S.A. 79-2111 applies.

One final point not considered by the district court or the Court of Appeals causes us to remand to the district court for further proceedings. The record demonstrates that the Ness County tax warrants applied only to the 1981 program's .729544 interest in the lease. Ness County's interest in the proceeds from the partition sale, less expenses, may not exceed the actual interest of the owner in the property.

The partition sale brought $40,600. Expenses of the sale were $8,200.54. This left the sum of $32,399.46 to be distributed. Had there been no liens on any of the property, the proceeds would have been distributed in the following manner:

| | |
|---|---|
| High Plains | $ 4,049.93 |
| 1981 program | $23,636.83 |
| 1982 program | $ 4,712.70 |

Although Ness County has a priority lien on the personal property interest of the 1981 program, there is nothing in the record to establish that either High Plains or the 1982 program are delinquent in their personal property taxes. Therefore, of the money available to be distributed, Ness County has priority only as to the $23,636.83 of the proceeds that represent the 1981 program's share plus any accrued interest. However, the record is not clear concerning the priorities regarding the remaining .125 interest of High Plains and the .145456 interest of the 1982 program. This determination must be made by the district court.

The Court of Appeals' decision reversing the district court is reversed. The decision of the district court is affirmed in part, reversed in part, and the case is remanded for further proceedings.