(692 P.2d 386)
No. 54,635

Bud Palmer and Carl McCoy d/b/a Broadway Furniture, *Plaintiffs-Appellees,* v. First National Bank of Kingman, Kansas, *Defendant-Appellant.*

Opinion filed December 20, 1984.

*Robert E. Nugent, III*, of Branine, Chalfant & Hill, of Hutchinson, for the defendant-appellant.

*Larry T. Solomon*, of Wunsch, Wunsch & Solomon, of Kingman, for the plaintiffs-appellees.

Before REES, P.J., MEYER, J. and JOHN W. BROOKENS, District Judge Retired, Assigned.

MEYER, J.: Defendant-appellant, First National Bank of Kingman, Kansas, (Bank) appeals from a decision by the trial court in favor of plaintiffs-appellees Bud Palmer and Carl McCoy (Palmer and McCoy). The decision required the Bank to reimburse Palmer and McCoy for personal property taxes paid by them after they purchased the inventory of a bankrupt furniture business, Kingman Furniture Inc., (KFI) from the Bank.

KFI filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Reform Act on October 17, 1980. The First National Bank of Kingman, in concert with the Small Business Administration (SBA), was a secured creditor of KFI. The Bank asserted their security interest in a petition for relief from the automatic stay provision in 11 U.S.C. § 362 (1982). On January 12, 1981, the bankruptcy court found that the SBA had a valid security interest in the inventory of KFI. The Bank, through assignment, obtained the SBA's interest in the inventory and in the financing transaction in general. The bankruptcy court's holding served to place the Bank in immediate possession of the personal property and gave it the right to sell the property and liquidate KFI's indebtedness to the Bank and the SBA. The Bank subsequently sold the inventory to Palmer and McCoy, retailers of distressed goods, on May 5, 1981.

On April 1, 1981, the Kingman County Treasurer issued tax warrants relating to the 1980 personal property taxes of KFI. On May 7, 1981, a warrant was issued for the 1981 taxes.

On May 28, 1981, a warrant for delinquent taxes was served on the Bank. On June 3, 1981, a similar warrant was served on Palmer and McCoy. On June 4, 1981, Palmer and McCoy paid the sum of $6,133.28 in delinquent property taxes.

Property taxes are not a lien upon the property against which they are assessed unless there is specific statutory authority so providing. *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 512, 625 P.2d 494 (1981). The only statutory authority in Kansas creating liens against an owner's personal property for nonpayment of taxes is found in K.S.A. 79-2109 and K.S.A. 79-2110.

The Bank argues on appeal that neither K.S.A. 79-2109, 79-2110, nor 79-2111 entitle Palmer and McCoy to reimbursement of the delinquent property taxes paid for 1980 and 1981. The trial court did not rule on the applicability of K.S.A. 79-2109 and 79-2110, but instead found that under K.S.A. 79-2111, the payment of the delinquent property taxes was the obligation of the Bank. This court is not bound by the trial court's interpretation of these statutes and may construe and determine their legal effect regardless of the construction placed upon them by the trial court.

K.S.A. 79-2109 has been discussed in only one recent case. In

*Robbins,* 229 Kan. 511, the court stated: "The statute clearly provides if the *owner* sells all of a class of property, after assessment but before payment, to any one person, the taxes are immediately due and become a lien on the property and are collectable from the purchaser, who has a claim against the owner. The statute further provides if the property is seized and sold for taxes the purchaser has a claim against the owner for the taxes. The statute does not establish a tax lien in this case because under the statute, the sale must be made by one who is the owner of the property at the time of assessment." *Robbins,* 229 Kan. at 514.

Although K.S.A. 79-2110 is not couched in terms such that the "owner" must also be the "seller," this statute nevertheless provides that the *person whose property is assessed* must be the seller. This is only a semantically different wording for stating the owner must be the seller in order for the statute to create a lien on the personal property. Thus, the first question before the court is, who "owned" the inventory at the time the property taxes for 1980 and 1981 were assessed?

Personal property taxes are assessed January 1 of each year pursuant to K.S.A. 79-301. On January 1 of 1980, KFI was the owner of all its inventory. No bankruptcy petition had yet been filed, and KFI was not in default on its loan from the Bank. Although on January 1, 1980, the Bank did have a security interest in the inventory, merely being a secured creditor does not render one an "owner" of the property. As the Bank sold the inventory on May 5, 1981, K.S.A. 79-2109 and 79-2110 are rendered inapplicable here because the owner at the time of assessment was not the seller of the property.

On January 1, 1981, KFI was in bankruptcy, having filed a voluntary petition for bankruptcy on October 17, 1980. Thus, the determination of who was the actual "owner" of the property for purposes of the 1981 taxes becomes more complex. Palmer and McCoy assert that the Bank was the owner of the inventory, and the Bank asserts that the trustee in bankruptcy was the owner of the property for purposes of the 1981 taxes. The trial court found the Bank was owner of the KFI inventory. We submit none of these propositions is correct.

On January 1, 1981, KFI was in bankruptcy, but the Bank was still only a creditor, *not* an owner. Palmer and McCoy urge the

court to consider the Bank an "equitable owner." The factual situation as it existed on January 1, 1981, precludes such a consideration. The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a)(1)(1982). Under paragraph 1 of subsection (a), *the estate* is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the commencement of the case. Creditors have no right to the property until their status is determined and their claim is allowed (11 U.S.C. §§ 502, 506 [1982]), and then, despite their secured status, will only recover property according to statutory priority lists. 11 U.S.C. § 726 (1982). Thus, on January 1, 1981, KFI was bankrupt and the property belonged to the *estate* — not to the Bank. Not until January 12, 1981, when the bankruptcy court determined the Bank to have a priority right to the inventory, did the Bank become an equitable owner. It was only at this time that the Bank had the right to take the property and sell it to cover the debt owed it by KFI. Thus, for purposes of the 1981 taxes, then, the "owner" of the property was not the "seller," and K.S.A. 79-2109 and 79-2110 are rendered inapplicable.

K.S.A. 79-2109 and 79-2110, therefore, do not govern the sale of personal property in this case.

The Bank next contends it was error for the trial court to find that K.S.A. 79-2111 required the Bank to reimburse Palmer and McCoy for delinquent property taxes paid by them. We conclude K.S.A. 79-2111 is controlling because of corresponding law in bankruptcy.

It is important in this case that KFI filed a Chapter 7 voluntary petition for bankruptcy. The county herein did not file a proof of claim against the bankrupt estate. Although 11 U.S.C. § 501 (1982) states only that a creditor *may* file a claim against the estate, the general rule as to an individual filing under Chapter 7 is that 11 U.S.C. § 726 (1982) calls for distribution *only* to creditors who have in fact filed such a claim. Those creditors who have not filed do not participate in the distribution of the estate's assets.

Where taxes are owed, however, 11 U.S.C. § 507(a)(6) provides a priority status for unsecured property tax claims of governmental units. Further, 11 U.S.C. § 523(a)(1)(A) provides that these priority tax claims are *not* affected by a discharge in bankruptcy provided under §§ 727, 944, 1141, or 1328 of Title 11.

More specifically, 11 U.S.C. § 727(a)(1) provides that a corporation may *not* receive a discharge from *any* claims against it, tax or otherwise. Corporate debts are thus "excepted" from discharge. This is a legislative change in policy designed to avoid trafficking in corporate shells.

The adjudication in bankruptcy of a corporation filing a voluntary petition does not operate as a dissolution of the corporation or termination of its existence. *Monroe v. Scofield*, 135 F.2d 725 (10th Cir. 1943); *Carpenter Co. v. Noble*, 140 Col. 486, 345 P.2d 731 (1959). The failure of a creditor to file a claim as to a debt which is excepted from bankruptcy discharge does *not* bar the creditor from proceeding against the debtor or the debtor's property. In this case then, the county's failure to file a claim against KFI has no effect other than to mean it will not participate in the distribution of KFI's assets and will have to proceed outside the bankruptcy process. Because Chapter 7 does not discharge a corporation's debts, the county's failure to file a claim against the estate does not foreclose other avenues of recovery.

We are thus presented with the unique prospect of applying K.S.A. 79-2111 to the facts of the instant case. This statute provides for a charge against the proceeds of personal property of a tax debtor sold after seizure upon *any legal process*. The question becomes: Did the Bank acquire possession of the KFI inventory as a result of seizure by legal process? *Robbins*, 229 Kan. 511, is instructive.

In *Robbins*, the Supreme Court expounded on the term "legal process," describing it in its ordinary and commonly accepted meaning as "proceedings begun by a writ, warrant, summons, order or mandate; proceedings which invoke the aid of judicial process or decree." *Robbins*, 229 Kan. at 515. Applying *Robbins* to the case before us, we conclude the Bank herein received, and subsequently sold, the KFI inventory as a result of seizure by legal process. The voluntary petition for bankruptcy, the corresponding assumption of ownership of KFI's inventory by the estate under § 541, and the authorization by the bankruptcy court giving the SBA (and by assignment the Bank) "immediate possession of [KFI inventory] with the right to sell said personal property in the manner prescribed by law thereby reducing the debtor's indebtedness to the [SBA]," all are one process —

bankruptcy — which meets the description of the term "legal process" espoused by the Supreme Court in *Robbins*. This being so, when the Bank sold the property to Palmer and McCoy, the requisites of K.S.A. 79-2111 were met, and the statute, by its wording, entitled the county to receive payment for delinquent property taxes owed out of the proceeds of that sale. The obligation to ensure Kingman County received payment out of the proceeds of the sale was thus on the Bank.

We must now consider what effect the payment by Palmer and McCoy of the debt owed Kingman County had on the Bank's obligation. The Bank urges the court to view Palmer and McCoy's payment of the delinquent taxes as voluntary — and thus an act which does not entitle them to reimbursement.

The trial court determined Palmer and McCoy were entitled to a reimbursement of sums paid by them, relying on the principle that, where one is compelled to pay money which another is bound by law to pay, the law implies a promise by the latter to reimburse the person so paying. We agree with the trial court's determination.

One who pays a tax voluntarily, that is, without compulsion or duress, has no valid claim for its repayment. *State, ex rel., v. Board of County Comm'rs*, 172 Kan. 601, 242 P.2d 527 (1952); *Washington Township v. Hart*, 168 Kan. 650, 215 P.2d 180 (1950). This is what is known as the "volunteer rule," which provides that a party who, without mistake, fraud, or duress, voluntarily pays money on a demand which is not enforceable against him, cannot recover the amounts paid. *In re Fees of State Bd. of Dentistry*, 84 N.J. 582, 588, 423 A.2d 640 (1980). This is because every man is supposed to know the law, and if he voluntarily makes a payment which is not compelled to be made by him under the law, he cannot afterward assign ignorance of the law as a reason why he should be furnished with legal remedies to recover it. *Johnson Controls v. Carrollton-Farmers, Etc.*, 605 S.W.2d 688, 689 (Tex. Civ. App. 1980); *In re Fees of State Bd. of Dentistry*, 84 N.J. 582. In contrast, where one makes a payment under duress, a valid claim for repayment does exist. *Bush v. City of Beloit*, 105 Kan. 79, 181 Pac. 615 (1919); *Jackson County v. Kaul*, 77 Kan. 715, 96 Pac. 45 (1908); *Johnson Controls v. Carrollton-Farmers, Etc.*, 605 S.W.2d 688; *Nat'l Biscuit Co. v.*

*State,* 134 Tex. 293, 135 S.W.2d 687 (1940); *Austin Nat'l Bank v. Sheppard,* 123 Tex. 272, 71 S.W.2d 243 (1934).

We must, therefore, determine whether Palmer and McCoy's payment was made freely and voluntarily, or was the result of compulsion and duress and, thus, was involuntarily made.

If duress or compulsion exists in this case, it is present because of the tax warrant issued by the Kingman County Sheriff's Department, a copy of which was served on Palmer and McCoy. K.S.A. 79-2111 provided that after the Bank sold the KFI inventory, all taxes on the personal property immediately came due. Under K.S.A. 79-2101 *et seq.,* after a tax warrant is issued, if the delinquent taxes are not paid, statutory provisions allow seizure and sale of the delinquent taxpayer's property.

This situation is closely analogous to that before the court in *Bank of Holyrood v. Kottmann,* 132 Kan. 593, 296 Pac. 357 (1931). In *Kottmann,* a Bank paid an amount of intangibles tax in excess of what was owed. The Bank thereafter sued to recover the excess paid; however, such was objected to by Ellsworth County, the county claiming the excess paid was a voluntary payment which could not be refunded. The Kansas Supreme Court held otherwise, and concluded that, under R.S. 1923, 79-2101 (1931 Supp.) (now K.S.A. 79-2101 *et seq.*), had the Bank delayed payment of the full amount allegedly owed, "the processes of law to enforce collection of those illegal taxes and penalties and costs would have been set in motion against it." The court thus found the threat of seizure and sale created by the statute made the Bank's payment of the excessive taxes *involuntary.* This position was articulated again in *First National Bank v. Sheridan County Comm'rs,* 134 Kan. 781, 783, 8 P.2d 312 (1932), wherein the court held the payment of tax pursuant to threat of a tax warrant constituted an involuntary payment.

We adopt the rationale used by the court in *Kottmann,* and conclude that Palmer and McCoy's payment in the instant case was *involuntary.* Consequently, the panoply of the rules discussed regarding payment of the obligation of another comes into play. We conclude, therefore, that the trial court was correct in its determination that Palmer and McCoy are entitled to reimbursement from the Bank for the delinquent property taxes paid by them.

The Bank urges us to follow the recent case of *In re American Properties, Inc.,* 30 Bankr. 239 (Bankr. D. Kan. 1983). In *Ameri-*

*can Properties,* Saline County, Kansas, had notice of the debtor's bankruptcy but failed to file proof of any claims relating to real estate taxes due from the bankrupt corporation. The county argued that it had received insufficient notice of the bankruptcy but the bankruptcy court found as a fact that the county had actual knowledge of the bankruptcy and had failed to file a claim in spite of that knowledge. That failure barred it from payment of its claim through the debtor's plan of reorganization. *American Properties,* 30 Bankr. at 246. The court stated:

"The Board is barred by the doctrine of res judicata from raising any arguments concerning the propriety of the debtor's strategy to dispute all claims under 11 U.S.C. § 1111(a), and is barred under the confirmed plan from enforcing its pre-confirmation tax lien." *American Properties,* 30 Bankr. at 247.

*American Properties* is not dispositive of the case now before us. *American Properties* involved a corporation's reorganization under Chapter 11 of the Bankruptcy Reform Act. Under Chapter 11, a corporate debtor is *discharged* from all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d) (1982). The debts being discharged, Saline County had no right to pursue remedies against the bankrupt corporation outside the bankruptcy process. In the instant case, KFI filed a Chapter 7 voluntary petition for bankruptcy. As discussed earlier, such *does not* discharge the corporation's debts. 11 U.S.C. § 727(a). As such, Kingman County was entitled to pursue avenues of recovery outside bankruptcy and thus was entitled to use the remedies available in K.S.A. 79-2111.

Affirmed.