**In re LISA, INC., Debtor.**

**J. Michael MORRIS, Trustee, Plaintiff,**

v.

**FORD COUNTY TITLE CO., INC., Defendant.**

No. 98–1146–JTM.
Bankruptcy No. 95–12036.
Adversary No. 96–5234.

United States District Court, D. Kansas.

Aug. 12, 1998.

---

J. Michael Morris, Mary T. Malicoat, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Plaintiff.

David J. Wood, Dresie, Jorgensen & Wood, P.A., Wichita, KS, for Defendant.

## MEMORANDUM ORDER

MARTEN, District Judge.

The Trustee in bankruptcy proceedings filed a complaint alleging breach of contract against Ford County Title Company. The basis of the Trustee's complaint was Ford's refusal to issue a title insurance policy without an exception for tax liens. The Trustee sought damages for the cost of replacement insurance and legal fees and expenses. Bankruptcy Judge Julie Robinson entered judgment against Ford in the amount of $2,375.00. Ford appealed to the bankruptcy appellate panel. The Trustee timely objected to consideration of the appeal by the panel and the appeal was transferred to this court, which affirms the judgment of the bankruptcy court.

## I. Standard of Review.

This court is bound by the factual findings of the bankruptcy court unless such findings are clearly erroneous. The bankruptcy court's conclusions of law are reviewed de novo. *In re Schneider*, 864 F.2d 683, 685 (10th Cir.1988). Here, the parties stipulated to the facts.

## II. Facts.

On March 13, 1996, the Trustee entered into an agreement to sell certain real and personal property of the debtor located in Ford County to Ellis Stutzman. The Trustee was required by the agreement to obtain title insurance for the real property. The Trustee contracted with Ford to obtain the insurance and to conduct the closing without the Trustee being present.

On April 4, 1996, Ford issued a title insurance commitment binder. The binder recognized that the sale was a bankruptcy sale free and clear of all liens. The binder contained a number of exceptions. Exception Number 18 provided as follows:

> We REQUIRE that the taxes and special assessments for the years 1986, 1987, 1988, 1989, 1990, 1991 (possibly), 1993, 1994, and 1995 be shown paid.

On April 17, 1996, the Trustee notified Ford of his objections to several of the exceptions. The Trustee objected to Exception Number 18 because the property would be free and clear of liens by court order and the lien would attach by operation of law to the proceeds of the sale. The Trustee enclosed a copy of Kansas Bar Association Title Standard 6.6. The Trustee asked Ford to "review the commitment in light of this letter and advise."

In other contacts on April 17 and 19, 1996, neither party raised Exception Number 18. The closing occurred on April 20 at Ford's office. The Trustee provided Ford with a copy of the court order of sale, which indicated the sale would be free of liens. The Trustee was not present at the closing and believed that Exception Number 18 had been deleted. Prior to the closing, the Trustee gave Ford a check for half of the title insurance policy premium, half of the closing costs and all of the certificate of search costs. After the closing, Ford refused to issue a commitment without the tax exception to another lender for Stutzman on a construction loan. Stutzman notified the Trustee and the Trustee retained counsel.

Ford had not issued a policy by June 7, 1996. The Trustee demanded that the policy be issued or the premium refunded. Ford indicated that a cancellation fee of $250 would apply and that the premium on the loan policy insurance purchased by Stutzman would increase from $60 to $597.50. The Trustee advised Ford that the policy must be issued by June 10, 1996, or he would bring an action for a determination of rights, turnover of all premiums, and damages.

On June 10, 1996, Ford issued a policy dated April 17, 1996. The policy contained the exception for tax liens objected to by the Trustee. The other exceptions the Trustee had objected to were deleted. On June 11, 1996, the Trustee advised Ford that the policy was unacceptable because it contained the tax lien exceptions. The Trustee advised Ford by letter that unless a policy without the exceptions was issued immediately, substantial damages would be incurred.

The Trustee suggested Ford contact the attorney for Ford County, who would indicate that there were no liens against the property for unpaid taxes. Ford's records indicate the county was contacted and the taxes were still listed as unpaid, and that the county attorney did not return a phone call.

Stutzman again complained to the Trustee and on June 18, 1996, the Trustee obtained a policy from another title insurance company for $885.00. The policy did not contain the exception for tax liens. On July 10, 1996, the Trustee paid the taxes as early as practicable.

The Trustee sought attorney's fees in the amount of $1,525.00. Ford did not concede the reasonableness of the fees below, but has abandoned this issue on appeal.

## III. Analysis.

Ford first argues that a seller cannot assert a breach of contract claim against a title insurance company because the seller

is not a party to the insurance contract. The bankruptcy court rejected this argument. Ford is correct that a seller cannot assert a claim under an insurance contract unless he is a beneficiary under the policy, but this is irrelevant as discussed below. Both Ford and the bankruptcy court misinterpret the nature of the Trustee's claim.

The bankruptcy court acknowledged that the Kansas Supreme Court has never directly addressed whether a seller can bring a breach of contract claim against a title insurance company. Treating the matter as a question of first impression, the court reasoned that a seller who pays part of the premium for title insurance can bring an action if no policy is issued. Thus, the seller should be able to bring an action if an unacceptable policy is issued and the seller suffers damages as a result. The bankruptcy court also found that Kansas would impose a duty of good faith and fair dealing on a title insurance company. The court found Ford had violated this duty by refusing to issue a policy without the tax lien exceptions where Ford acknowledged that the sale was made free and clear of all liens.

Subsequent to the bankruptcy court's decision, the Kansas Supreme Court addressed the duties owed by a title insurance company to a seller under the insurance contract. *See Steinle v. Knowles*, 265 Kan. 545, 961 P.2d 1228 (1998). *Steinle* held that when a title insurance policy provides no insurance for the seller, a seller who also holds a mortgage on the property and loan insurance with the same carrier cannot bring an action against the insurance company for refusing to defend a lawsuit alleging a defective title. *Id.*

*Steinle* is distinguishable because here the Trustee is not seeking damages under either the title insurance contract or the loan insurance contract. Although the bankruptcy court's analysis assumes the Trustee is seeking relief under the title insurance contract, the Trustee is actually seeking damages under the contract to abstract the property, provide an insurance binder and conduct the closing. *See Ford v. Guarantee Abstract &*

*Title Co., Inc.*, 220 Kan. 244, 257, 553 P.2d 254 (1976) (*Guarantee Abstract I* ), disapproved on other grounds, *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 652 P.2d 665 (1982) (*Guarantee Abstract II* )[1]; *Tess v. Lawyers Title Insurance Co.*, 251 Neb. 501, 557 N.W.2d 696 (1997) (following *Guarantee Abstract I* ). The Trustee's complaint and his brief on appeal make it clear he is alleging breach of a contract to abstract the property, conduct the closing, and issue an insurance policy to the buyer.

*Guarantee Abstract I* held that a company which engages in the business of examining and guaranteeing titles has the same responsibilities as an individual conveyancer or attorney, and is liable to its employer under the same principals applicable to the relationship between attorney and client. Further, the relationship is fiduciary in nature. *Guarantee Abstract I*, 220 Kan. at 244, 553 P.2d 254 Syl ¶ 1, 256–61. When a title insurer breaches its duty to abstract title accurately it may be held liable for all damages proximately caused by such breach. *Id.*, 220 Kan. at 258, 553 P.2d 254.

An attorney is obliged to his or her client to use reasonable and ordinary care and diligence in the handling of cases; to use his or her best judgment; and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other attorneys in the community. *McConwell v. FMG of Kansas City, Inc.*, 18 Kan. App.2d 839, Syl. ¶ 4, 861 P.2d 830 (Kan.App. 1993), rev. denied, 254 Kan. ⸺ (1994). Accordingly, this is the standard which must be applied to Ford's performance of the contract with the Trustee.

In *Guarantee Abstract I*, a realtor engaged the services of a title company and deposited money with the company with express instructions to use the money to clear the title for the purchaser. The title company negligently used the money to pay off a mortgage on the property, but failed to clear the title. The purchaser sued. The Kansas Supreme

---

**1.** *Guarantee Abstract II* clarified that the action was based on contract, not tort, as discussed below. 232 Kan. at 80, 652 P.2d 665.

Court reasoned that the realtor was an agent for both the seller and the buyer, and thus the title company was employed by both parties. Accordingly, the title company was liable to the buyers for failing to exercise due care in handling the escrow funds.

Ford attempts to distinguish *Guarantee Abstract I*, first arguing that the buyer is its client, not the seller. However, the Trustee engaged the services of Ford and paid for the title search conducted to produce the binder. Under *Guarantee Abstract I*, the Trustee was a client with respect to Ford's duties to abstract the property accurately, prepare the binder and facilitate the closing because the Trustee was Ford's employer.

Ford next argues that in *Guarantee Abstract I*, the insurance policy was never issued and the sale never closed. *Guarantee Abstract I*'s analysis does not turn on whether an insurance policy was eventually issued. The Kansas Supreme Court expressly noted the action was not based on a title insurance policy. 220 Kan. at 257, 553 P.2d 254.

Finally, Ford attempts to distinguish *Guarantee Abstract I* and similar cases because recovery was based on a tort theory in the cases, rather than a contract theory. *Guarantee Abstract I* noted that some jurisdictions allow a plaintiff to choose whether to pursue damages under a tort or contract theory. *Guarantee Abstract I* proceeded to conduct its analysis under a tort theory, presumably because that was the theory the plaintiffs presented. *Guarantee Abstract II* made it clear that the plaintiff's claim was a contract claim, not a tort claim. 232 Kan. at 80, 652 P.2d 665. This issue was important because the buyer sought punitive damages. *Id.* Here, the Trustee is presenting his claim as a breach of contract claim, which is permissible under *Guarantee Abstract II*.

■ Ford next argues that a title insurance company is free to impose any conditions it wants in the insurance policy. The Trustee argues that only reasonable conditions consistent with general title standards may be imposed. The Trustee argued Ford violated a duty of good faith and fair dealing when it refused to issue a policy without the exception. *See Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987) (apply-ing duty of good faith and fair dealing to parties in real estate lease). The Trustee cited the Kansas Title Standards Handbook as evidence that Ford's refusal was inconsistent with general title standards. The bankruptcy court agreed with the Trustee, and relying on the handbook as evidence of what constitutes reasonable performance, concluded Ford had breached its duties under the contract when it refused to issue a policy without the exclusion. This court agrees with the bankruptcy court's analysis.

Ford argues the bankruptcy court's decision is incorrect for a number of reasons and cites several cases, primarily from other jurisdictions. The court finds Ford's arguments unpersuasive and the cases distinguishable.

Ford first cites cases where a buyer was permitted to withdraw from a real estate contract because the seller was unable to clear valid liens on the property. These cases are inapplicable because here the order of the bankruptcy court cleared the property of tax liens upon sale. In other words, the tax liens were not valid when Ford refused to issue the policy without the exception. Ford also cites dicta from *Wilkinson v. Rives*, which similarly involved a title insurance company's refusal to issue an insurance policy without excepting valid tax liens on the property.

Ford next cites *De Carli v. O'Brien*, 150 Or. 35, 41 P.2d 411 (1935) (*en banc*). In *De Carli* the seller issued a warranty deed (a covenant against encumbrances). The purchaser subsequently became aware of a lien. The purchaser settled with a title insurance company and sought to recover from the seller. The seller argued the settlement with the insurer released him of liability. *De Carli* rejected this argument because there was no understanding between the seller and the buyer that the seller was the beneficiary of the policy and because the seller independently guaranteed the deed. The seller then argued the insurance company was acting as a surety. The court rejected this argument and interpreted the policy under traditional insurance principals.

*De Carli*, as well as *Hooper v. Commonwealth Land Title Ins. Co.*, 285 Pa.Super.

265, 427 A.2d 215 (1981); and *Logan v. Gans,* 277 Pa.Super. 282, 419 A.2d 772 (1980), are distinguishable from this case for the same reason as *Steinle*—here the Trustee is not seeking damages under the insurance contract but under another contractual arrangement with the title company. Significantly, *Logan* dismissed a claim brought by the sellers under an insurance policy, but ordered that on remand the sellers be allowed to amend their complaint to assert claims based on any other contracts they may have had with the title insurance company. 419 A.2d at 775.

Ford next cites *Gilchrest House, Inc. v. Guaranteed ·Title & Mortgage Co.,* 277 A.D. 788, 97 N.Y.S.2d 226 (N.Y.App.Div.1950), *affirmed,* 302 N.Y. 852, 100 N.E.2d 46 (1951). In *Gilchrest,* the plaintiff had a policy insuring title with the defendant title company. The plaintiff contracted to sell the insured property to a buyer. The buyer rejected the title. The title company rejected the reasons offered by the buyer. The plaintiff subsequently contracted to sell the property to a second buyer with the plaintiff to give and the buyer to receive such title as the defendant title company would insure. The title company refused to insure the property without excepting the rights of the original prospective buyer. The plaintiff obtained a mutual release of claims from the first buyer. The closing occurred and the plaintiff sought to recover the difference in the contract price on the second sale from the title company, alleging the company wrongfully refused to insure the property without a release from the first prospective buyer.

The appellate division ordered the plaintiff's complaint dismissed, reasoning that (1) the plaintiff's damages flowed from his voluntary agreement to release his claim against the first prospective buyer; and (2) a title insurance company has no duty to insure even marketable title. The court of appeals affirmed based on the first reason cited by the appellate division. It did not address the second reason.

Ford relies on *Gilchrest's* holding that a title insurance company has no duty to insure even marketable title. This holding was not embraced by the New York Court of Appeals when it had the opportunity to do so. *Gilchrest* makes no mention of whether the title company was retained as the closing agent for the seller. Furthermore, to the extent it holds that no duties exist *Gilchrest* is inconsistent with the holding of *Guarantee Abstract I* that under Kansas law duties to the employer arise when a title insurance company undertakes to abstract property and complete closings.

Ford next cites *Aronoff v. Lenkin Co.,* 618 A.2d 669 (D.C.App.1992). *Aronoff* first found that a title insurance company acting exclusively as an insurer owed no duties to a seller who had not contracted for the issuance of an insurance policy. While the court said "We think a title insurer has an unqualified right to select the risks it is willing to underwrite," the court immediately added, "Unless it is otherwise bound by law or contract, it may refuse to insure for any reason, sound or not, or for no reason at all." 618 A.2d at 686. The court affirmed dismissal of the seller's claim based on the title company's refusal to issue a policy. However, the court expressly declined to decide whether a seller may hold a title company liable for negligence in performing a title search because the seller had not alleged any facts in support of such a claim. The court went on to hold that as a settlement agent, the title company had a duty to inform the seller of any problems of which it was aware that might prevent closing of the sale, reversing the trial court's dismissal of that claim.

Ford next complains about the bankruptcy court's reliance on the Kansas Bar Association's Title Standards. Ford first confuses relying on the standards as an indicator of the appropriate standard of performance and relying on the standards to determine the marketability of the title. The bankruptcy court's reliance on the standards as an indicator of the appropriate standard of performance was appropriate. *See Miller v. Alexander,* 13 Kan.App.2d 543, 549, 775 P.2d 198 (Kan.App.) (relying on standards to hold a reasonable purchaser would read a contract for deed that might affect the seller's title), *rev. denied* (Kan.1989). *See also Bank of Kansas v. Davison,* 253 Kan. 780, 861 P.2d

806 (1993) (relying on standards as further support for decision regarding validity of tax liens); *Riggs v. Snell,* 186 Kan. 355, 359–60, 350 P.2d 54 (1960) (standards are entitled to consideration as being the consensus and general understanding of the bar).

The bankruptcy court's order of sale free of liens is what makes the title marketable. The bankruptcy court relied on 11 U.S.C. § 363(f) in issuing the order of sale free of liens. The court did not rely on the Kansas Bar Association's Title Standards to determine the marketability of the title.

Ford complains that the standards apply to attorneys by their terms, and not to title companies. However, *Guarantee Abstract I* held that a title company engaging in the business of examining titles and conveying property has the same responsibilities as an attorney or conveyancer engaging in such activities. 220 Kan. at 244 Syl. ¶ 1, 256–61, 553 P.2d 254. If the standards are evidence of the appropriate standard for an attorney abstracting property, they are evidence of the appropriate standard for a title company engaged in the same activity.

Ford argues that if it issued the policy without the exception, it could be forced to defend a suit brought by the county against Stutzman and may be required to pay the taxes. Thus, Ford argues its refusal cannot be said to be unreasonable. There are two problems with this argument. First, the bankruptcy court ordered the property sold free and clear of all liens, thus the county could not recover from Stutzman or Ford. Second, even if Ford were somehow required to pay the taxes, it could bring an action against the Trustee. *See Palmer v. First National Bank of Kingman,* 10 Kan.App.2d 84, 87, 692 P.2d 386 (1984) (purchaser who pays taxes has claim against seller).

■ Ford next argues that the Trustee's damages flow from his voluntary act of purchasing another insurance policy instead of its failure to issue a policy that would satisfy Stutzman. Ford cites *Palmer. Palmer* outlines the volunteer rule, which provides that a party who, without mistake, fraud or du-

ress, voluntarily pays money on a demand which is not enforceable against him, cannot recover the amounts paid. *Palmer* held the rule inapplicable where the plaintiff was served with a tax warrant.

Ford argues the rule is applicable here because the Trustee cannot show the policy it issued was worthless to Stutzman. Assuming the Trustee's purchase of alternative insurance should not simply be viewed as cover, the issue is whether Stutzman could have reasonable brought an action against the Trustee for breach of the contract term to provide title insurance. *See Palmer,* 10 Kan. App.2d at 91, 692 P.2d 386 (threat of seizure and sale made purchaser's payment of taxes involuntary). Where the sale was to occur free and clear of liens, pursuant to court order, the provision of the Trustee's contract with Stutzman requiring the Trustee to secure title insurance must be interpreted to mean title insurance free of exceptions for liens. Thus, Stutzman could have brought a breach of contract claim against the Trustee if he failed to secure title insurance without the exception. Accordingly, the Trustee's purchase of alternative insurance cannot be construed as a voluntary payment.[2]

Finally, Ford argues the bankruptcy court's reliance on the doctrines of "detrimental reliance" and "good faith and fair dealing" was improper because the Trustee did not raise these arguments. The court finds the Trustee's pleadings below adequately state the nature of his breach of contract claim.

IT IS ACCORDINGLY ORDERED this 11th day of August, 1998, that the judgment of the bankruptcy court is affirmed.

---

2. Significantly, the bankruptcy court did not allow the Trustee to collect damages for both the replacement policy and the premium paid to Ford.