**In re Michael Richard URBAN,
Vickie Lee Urban, Debtors.**

No. 00–12949.

United States Bankruptcy Court,
D. Kansas.

May 30, 2001.

David J. Lund, Wichita, KS.

J. Michael Morris, Wichita, KS.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR TURNOVER AND OBJECTION TO AMENDED CLAIM OF EXEMPTION

ROBERT E. NUGENT, Bankruptcy Judge.

This case comes before the Court on the Trustee's Motion For Turnover And Objection To Amended Claim Of Exemption. The trustee seeks turnover from the debtors of $1,979.65, representing wages earned as of the date of bankruptcy but paid post-petition. Debtors assert that seventy-five percent (75%) of these wages are exempt under K.S.A. § 60–2310. The trustee objects to the claimed exemption. Michael and Vickie Urban, the debtors, are represented by David J. Lund. The Chapter 7 trustee, J. Michael Morris, is represented by Erin E. Syring. The parties submitted the matter on stipulations and briefs. Because the Court finds that the Kansas statutes confer a partial exemption in wages, the trustee's motion for turnover and objection to exemption are each denied in part.

## FACTS

The Urbans filed their Chapter 7 petition on August 1, 2000. Prior to the filing, Mr. Urban earned compensation for the period of Sunday, July 16, 2000 through and including Saturday, July 29, 2000. On August 7, 2000, Mr. Urban's employer, an agency of the United States, directly deposited his net earnings into the Urban's checking account.

## DISCUSSION

The core issue here is whether these debtors may claim some portion of the earnings exempt under K.S.A. § 60–2310. When determining the validity of a claimed state law exemption, bankruptcy courts look to the applicable state law.[1] In a contested matter, the trustee has the burden of demonstrating that the claimed exemption is improper.[2]

That these wages were, ab initio, property of the estate is beyond dispute. Section 541(a)(1)[3] provides that, at the commencement of a case, the estate is comprised of "all legal and equitable interest of the debtor and property." Wages earned pre-petition but paid post-petition

---

1. See In re Sanders, 39 F.3d 258 (10th Cir. 1994); In re Vann, 177 B.R. 704, 708 (D.Kan. 1995) (citing In re Kane, 167 B.R. 224, 225 (Bankr.D.Kan.1993)(Kansas law controls what debtors may claim as tools of the trade.))

2. Fed. R. Bankr.P. 4003(c).

3. All references are to the Bankruptcy Code, Title 11 United States Code, unless otherwise noted.

are certainly "legal interests" of the debtor and, therefore, property of the estate.[4]

Section 522(b)(2) allows debtors to exempt any property which is exempt under federal non-bankruptcy law or under the law of the state of debtor's domicile. This code section also allows states to restrict their citizens from claiming the federal bankruptcy exemptions outlined in § 522(d). Kansas has done so by enacting K.S.A. § 60–2312(a) which prohibits debtors from electing to utilize the federal exemptions.

A review of the history of K.S.A. § 60–2310 and its forebears makes clear that Kansas has a tradition of wage exemption and that the legislature intended to carry that tradition forward with the enactment of the present statute in 1970.

K.S.A. § 60–2310, as currently in force, is an almost verbatim copy of an anti-garnishment statute enacted as part of the Consumer Credit Protection Act. *See* 15 U.S.C. § 1673(a). K.S.A. § 60–2310 contains the only reference to wages found in that part of the Kansas Civil Code which is devoted to exemptions. Historically, Kansas has always had a garnishment limitation or "exemption" of some of its debtors' wages. Gen.Stat. § 60–3494 (1949) provided for the court to order various of debtors' property to be applied to the satisfaction of the judgment, but expressly exempted wages from that power. The statute, in some form, first appeared in the Territorial Laws of 1858.[5] In 1886, the same form of the statute was carried forward and the Legislature enacted Gen. Stat. § 60–3495 (1949), which permitted a

creditor to garnish an amount not more than 10% of the debtor's wages for a three month period preceding the attachment if the debtor was the head of the household and could demonstrate a need to retain the funds. The Kansas Supreme Court stated in *Zimmerman v. Franke:* [6]

> "It is settled law in Kansas, that where an attempt is made under judicial process to subject personal earnings of the debtor to the payment of his debts, such earnings ... are exempt from such process, whether the process is issued before or after judgment, or whether it is an attachment or garnishment process or an execution."

Citing *Zimmerman* as precedent, a more recent case, *Neely v. St. Francis Hosp. and School of Nursing,* also held that Gen. Stat. §§ 60–3494 (1949) and 60–3495 (1949) establish an exemption in wages in Kansas.[7]

The civil procedure sections of the General Statutes of 1949 were repealed in 1963 and, with them, Gen.Stat. §§ 60–3494 and 60–3495. The legislature enacted K.S.A. § 60–2310 which was identical to former Gen.Stat. § 60–3495, thus receiving into the new civil code the garnishment limitation and wage exemption of the old law. This statute remained in force for some seven years until the legislature enacted the current form of K.S.A. § 60–2310. From 1858 to 1970, Kansas accorded a form of exempt status to some of a judgment debtor's wages.

1970 brought with it not only the recent enactment of the Consumer Credit Protection Act of 1968, but also the United States

---

4. *See In re Jones,* 181 B.R. 538, 542 (D.Kan. 1995); *Calder v. Segal (In re Calder),* 94 B.R. 200, 202 (Bankr.D.Utah 1988) *aff'd,* 912 F.2d 454 (10th Cir.1990).

5. 1858 Terr. Law Ch. 11, then, as § 490 of the Kansas Civil Code (1868).

6. *Zimmerman v. Franke,* 34 Kan. 650, 653, 9 P. 747 (1886).

7. *Neely v. St. Francis Hosp. and School of Nursing,* 192 Kan. 716, 722, 391 P.2d 155 (1964).

Supreme Court's decision in *Sniadach v. Family Finance Corp.*, which barred prejudgment wage garnishment.[8] Responding to these federal pronouncements, Kansas undertook an amendment of the garnishment statutes to conform to federal law. The 1970 legislature enacted substantial portions of that part of Chapter 60 pertaining to attachments and garnishments (K.S.A. § 60–701, et seq.) along with current K.S.A. § 60–2310. *See* 1970 Kan. Sess. Law. Ch. 238.

K.S.A. § 60–717(c) provides, in part, that an order of garnishment attaches to the "nonexempt" portion of the debtor's earnings. "Non-exempt" earnings are those "not exempt from wage garnishment pursuant to K.S.A. § 60–2310." This reference, taken in the historical context outlined above, suggests that the legislature had every intention of retaining the wage exemption, even though K.S.A. § 60–2310 substantially changed that exemption's scope and degree.

Current K.S.A. § 60–2310 limits wage garnishments as follows: an individual's wages which may be subjected to wage garnishment may not exceed (1) the lesser of 25% of his aggregate disposable earnings for the work week; or (2) the amount by which his aggregate disposable earnings exceed an amount equal to 30 times the federal minimum hourly wage; or (3) the amount of the plaintiff's claim as set forth in the order for garnishment. Further, no one creditor may issue more than one garnishment against the earnings of the judgment debtor during one 30 day period. K.S.A. § 60–2310(b).

"Disposable earnings" is defined as "that part of the earnings of any individual remaining after the deduction from such earnings of any amounts required by law to be withheld." K.S.A. § 60–2310(a)(2). "Earnings" is defined as "compensation *paid or payable* for personal services ..." K.S.A. § 60–2310(a)(1) (emphasis added). "Wage garnishment" is defined as "any *legal or equitable* procedure through which the earnings of any individual are required to be withheld for payment of any debt ..." K.S.A. § 60–2310(a)(3)(emphasis added).

In arguing that K.S.A. § 60–2310 is not an exemption statute, the trustee asserts that the statute is only designed to operate as a restriction on garnishment outside of bankruptcy. The trustee suggests that this is so because the restriction restricts "earnings" to be subjected to "wage garnishment" which is limited to situations where wages are "required to be withheld for payment of any debts." K.S.A. § 60–2310(a)(3). Because, according to the trustee, bankruptcy is not a "legal or equitable procedure" requiring wages to be withheld, the restriction itself does not serve as an exemption.[9] Finding nothing in the statutory language or legislative history to support the trustee's view, this court disagrees.

First, this Court considers the argument that K.S.A. § 60–2310 is a restriction not an exemption to be a distinction without a difference. Garnishment is the only method of "executing" on a debtor's wages available in this state. K.S.A. § 60–714 describes garnishment as either an aid to attachment or "in lieu of execution." K.S.A. § 60–716 provides that, to aid enforcement of a judgment, the clerk may issue a garnishment order. Thus wage garnishment is analogous to execution.

K.S.A. § 60–2310 is no different from any other Kansas exemption statute found in Article 23 in that none of the statutes

---

8. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

9. *See* Trustee's Brief, p. 3.

exempting the homestead, tools of the trade, vehicles, and other assets of the debtor, directly addresses bankruptcy. Only K.S.A. § 60–2312, discussed above, refers to bankruptcy at all. Just as a writ of execution need not be pending against a debtor's homestead to enable him to claim the homestead exemption in bankruptcy, pre-existing process should not be a prerequisite to a bankruptcy debtor's right to claim the partial wage exemption provided by K.S.A. § 60–2310. The legislature is well aware of its power to limit exemptions in bankruptcy and has exercised that power in enacting K.S.A. § 60–2312 (opting out of the § 522(d) exemptions) and K.S.A. § 40–414 (limiting the extent to which insurance policy cash value may be exempted in bankruptcy).

Second, the trustee's argument that the commencement and continuation of a bankruptcy case is not "process" as that term is used in K.S.A. § 60–2310 is not well-founded. Admittedly, no Kansas case law bears directly on this question. However, the Kansas Court of Appeals has found the filing of a bankruptcy, and the process incident to it, to constitute "process" for the purpose of triggering the attachment of the personal property tax lien as provided by K.S.A. § 79–2111.[10] This statute provided "for a charge against the proceeds of personal property of a tax debtor sold after seizure *upon any legal process*."[11] The court of appeals defines "legal process" as "proceedings begun by writ, warrant, order or mandate ... issued by some court, body, or official having authority to issue process ...."[12] In

*Palmer,* the court concluded that, in a case where a creditor received the debtor's property by obtaining stay relief and repossessing same, the bank had obtained the property by virtue of legal process sufficient to trigger a lien under K.S.A. § 79–2111.

> "The voluntary petition for bankruptcy, the corresponding assumption of ownership of K.F.I.'s inventory by the estate under § 541, and the authorization by the bankruptcy court giving [the bank] immediate possession ..., are all one process-bankruptcy-which meets the description of the term 'legal process' espoused Supreme Court in *Robbins.*"[13]

■ It is difficult to fathom what the means of effecting the transfer of a debtor's property to the bankruptcy estate is if it cannot be considered a "legal or equitable procedure." Thus, this Court concludes that the filing of bankruptcy is a "legal or equitable procedure" creating an estate entitled to collect these wages "for the payment of any debt," subject to the restrictions or exemptions found in K.S.A. § 60–2310 and that the debtor may avail himself of the exemption provided in that statute.

The trustee seeks a last resort in the United States Supreme Court's opinion in *Kokoszka v. Belford.*[14] This case, however, addressed the debtor's attempted exemption of a tax refund as wages under the Consumer Credit Protection Act provision, 15 U.S.C. § 1673(a) which is identical in language to K.S.A. § 60–2310. The Su-

---

**10.** *Palmer v. First National of Kingman,* 10 Kan.App.2d 84, 692 P.2d 386 (1984).

**11.** 10 Kan.App.2d at 89, 692 P.2d 386 (emphasis added).

**12.** *Robbins Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.,* 229 Kan. 511, 515, 625 P.2d 494 (1981).

**13.** 10 Kan.App.2d at 84, 89–90, 692 P.2d 386.

**14.** *Kokoszka v. Belford,* 417 U.S. 642, 648, 94 S.Ct. 2431, 2435, 41 L.Ed.2d 374 (1974).

preme Court held that Congress did not intend to create a separate bankruptcy exemption when it enacted this statute. Whether or not Congress intended to create such an exemption sheds no light on whether the Kansas legislature sought to create an exemption when it borrowed 16 U.S.C. § 1673(a)'s language and incorporated it into K.S.A. § 60–2310. This Court believes that the Kansas legislature clearly had that intent when it enacted K.S.A. § 60–2310 in place of a wage exemption statute which had been in effect in this state for many years. Indeed, the title of House Bill 1996 introduced in the Kansas Legislature in 1970 and containing K.S.A. § 60–2310, was "An Act Relating To Attachment And Garnishment Proceedings; Providing Certain Exemptions And Restrictions . . ."

■ In short, this Court agrees with United States Bankruptcy Judge Julie A. Robinson's view, expressed in *In re Adcock*, that wages earned pre-petition and paid either pre- or post-petition, to the extent they are not commingled or cannot be traced, are protected by the exemption created in K.S.A. § 60–2310.[15] In so holding, this Court recognizes the prior findings of United States District Judge Monti L. Belot in *In re Adcock* ("*Adcock II* "), in which the United States District Court reversed the Judge Robinson's decision that a debtor might avail him or herself of this exemption.[16] In so doing, the District Court relied to a great degree on an unpublished opinion of the United States Bankruptcy Court in *In re Doughman*, in which United States Bankruptcy Judge John K. Pearson found from his

review of the terms of K.S.A. § 60–2310 itself that the statute distinguishes between monies owed and paid and held that once a debtor's wages are deposited into a bank account, they lose their character as "earnings." [17] Based on this analysis, and without any consideration of the statute in either historical or legislative context, Judge Pearson explicitly held that K.S.A. § 60–2310 does not confer an exemption in bankruptcy.

This Court respectfully disagrees with *Adcock II* and *Doughman* because neither Court was apparently presented with or considered the legislative historical context in which not only current K.S.A. § 60–2310 but also the garnishment statutes enacted with it were drafted. Further, in *Doughman*, Judge Pearson held that K.S.A. § 60–2310 restrictions apply only to wages before they are paid to the debtor, ignoring the plain statutory reference to "earnings" as "compensation *paid or payable.*" (emphasis added). Until the earnings are commingled or become untraceable, this Court believes that a portion of debtor's wages are indeed exempt under K.S.A. § 60–2310. This Court fails to see how an "exemption" of wages which evaporates when those wages are deposited in a debtor's bank account represents meaningful debtor protection.

In so holding, this Court joins a number of other bankruptcy courts which, confronted with similar wage garnishment restriction statutes, all of which are similar to K.S.A. § 60–2310 and all of which are modeled on the CCPA, have similarly held.[18]

---

**15.** *In re Adcock,* 234 B.R. 815 (Bankr.D.Kan. 1999).

**16.** *In re Adcock,* No. 99–1233, slip op. (D.Kan. March 10, 2000)

**17.** *In re Doughman,* No. 98–12289, slip op. at 4–5 (Bankr.D.Kan. July 16, 1999).

**18.** *See also In re Robinson,* 241 B.R. 447 (9th Cir. BAP 1999)(Oregon legislature asserted a clear intent to retain some exempt status in the debtor's wages even though Oregon gar-

Noteworthy, but distinguishable, is *In re Lawrence,* the case relied upon by Judge Pearson in *Doughman,* concluding that the Tennessee version of the CCPA statute does not create an exemption.[19] In Tennessee, there is no other statutory wage exemption nor does there appear to have been any tradition of a wage exemption. Further, the Tennessee statute exempts bank accounts as part of its blanket personal property exemption. As noted above, the Kansas legal tradition is different.

The preservation of some of the debtor's pre-petition wages supports the policy of the fresh start which underlies the bankruptcy code. K.S.A. § 60–2310 grants Kansas debtors a partial exemption of their wages. Until the Kansas legislature expressly limits its availability as it has concerning life insurance and the § 522(d) exemptions, this exemption, like Kansas' other statutory exemptions, should be available to Kansas debtors in bankruptcy.

IT IS THEREFORE ORDERED that Trustee's Motion For Turnover be granted only to the extent of $494.92. The trustee's objection to the debtor's exemption of seventy-five percent (75%) of his pre-petition wages or $1,484.73, is overruled. A separate Judgment on Decision will issue this day.

### JUDGMENT ON DECISION

This case comes before the Court on the Trustee's Motion For Turnover And Objection To Amended Claim of Exemption.

In his motion, the trustee seeks turnover from the debtors $1,979.65, representing wages earned as of the date of bankruptcy but paid post-petition. Debtors assert that seventy-five percent (75%) of these wages are exempt under K.S.A. § 60–2310.

For reasons stated in the Memorandum Opinion On Trustee's Motion For Turnover And Objection To Amended Claim Of Exemption, judgment is hereby entered in favor of the trustee only to the extent of $494.92. The trustee's objection to the debtor's exemption of seventy-five percent (75%) of his pre-petition wages or $1,484.73, is overruled.

IT IS SO ORDERED.

nishment statute was silent about whether it constituted an exemption); *In re Sanders,* 69 B.R. 569 (Bankr.E.D.Mo.1987)(the pre-existing wage exemption statute, read with the garnishment limitation provided for Missouri's version of 15 U.S.C. § 1673, demonstrated Missouri's intention to keep wages exempt); *In re Stewart,* 32 B.R. 132 (Bankr. D.Utah 1983)(bankruptcy court found that the long tradition of wage exemption in the state of Utah indeed survived in the form of the garnishment limitations statute and that Utah debtors would be permitted to exempt some portion of their earnings in bankruptcy); *In re Smith,* 23 B.R. 708 (Bankr.D.Md.1982); *In re Norris,* 203 B.R. 463 (Bankr.D.Nev.1996).

19. *In re Lawrence,* 219 B.R. 786 (E.D.Tenn. 1998).